[Crim. No. 19468. Jan. 25, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ALLEN DeVAUGHN, Defendant and Appellant.

[Crim. No. 19469. Jan. 25, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY LEWIS DeVAUGHN, Defendant and Appellant.

**COUNSEL**

David E. Kenner and Mel Albaum, under appointment by the Supreme Court, and Walter King, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Edward T. Fogel, Jr., Penina S. Van Gelder and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

WRIGHT, C. J.—Defendants Mark Allen DeVaughn and his brother Timothy Lewis DeVaughn appeal from judgments of conviction of burglary in the second degree. (Pen. Code, §§ 459, 460.)[1] Both defendants contend that their initial detentions and ensuing arrests were illegal; that extrajudicial statements constituting confessions were obtained as a result of illegal police conduct; and that the trial court erred in failing to grant defendants' motions to set aside the information (§ 995) and to suppress the extrajudicial statements on grounds that they were involuntarily made.

Following their unsuccessful motions to suppress the challenged statements each defendant pleaded guilty to burglary in the second degree in accordance with a plea bargain. Further in accordance with the bargain the trial court, after judgments,[2] issued certificates of probable cause which purported to preserve for review on appeal the issues raised on the motions. (See § 1237.5.) We are of the view that the extrajudicial statements should have been suppressed by reason of having been procured as the result of illegal arrests (*Brown* v. *Illinois* (1975) 422 U.S. 590 [45 L.Ed.2d 416, 95 S.Ct. 2254]), and nothing having occurred which attenuated or dissipated the taint of such illegalities (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]). We hold, however, that the errors in failing to suppress the extrajudicial statements are not cognizable on appeal after guilty pleas, and that the trial court could not bargain to preserve such issues on appeal by issuance of certificates of probable cause. We conclude, accordingly, that the guilty pleas were improperly induced and we reverse the judgments.

At approximately 1 p.m., Police Officer Hamilton was on routine patrol in a marked patrol car. He observed defendants behind him

---

[1] Unless otherwise specified all statutory references are to sections of the Penal Code.

[2] Imposition of sentence as to both defendants was suspended. They were placed on summary probation—Mark for three years on condition that he pay a fine of $250, Timothy for four years on condition that he serve the first year in county jail.

running in his direction and backed his patrol car toward them. He lost sight of defendants when they left the street and ran between houses. Officers Garcia and Barbara who were on a plainclothes assignment to the burglary detail responded to Hamilton's call for assistance. The latter related his observation and gave a physical description of defendants to his fellow officers. The neighborhood in which defendants had been observed was residential and had suffered a high number of burglaries in recent months. At the time of Hamilton's observation, however, the police had no information that a specific burglary had recently occurred in that neighborhood.

On the basis of the information provided by Hamilton, Garcia and Barbara thereafter observed defendants and stopped them on the street. The officers separated the suspects, questioned them individually as to their reason for being in the area, and discovered that there were "deviations" in the responses of the two defendants. One defendant indicated that they had walked to the neighborhood; the other related that they had come by car. One stated that he knew the name of a friend they had come to visit; the other professed ignorance of the name of the friend. Both defendants appeared extremely nervous and, prior to his apprehension, Timothy had removed the shirt which he had been wearing when first observed by Hamilton.

Based solely on the foregoing circumstances the officers placed defendants under arrest and advised them of their rights as prescribed in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Mark waived his right to remain silent and his right to an attorney. Timothy at first appeared to waive his right to remain silent. However, immediately thereafter when asked by Barbara if there was anything he wanted to say, Timothy stated: "I don't know anything. I won't say anything."[3]

Barbara testified to the events as follows: "I returned from the vehicle, and he [Mark] stated—I told him that there was a lot of burglaries in the area; that I was taking him to jail for burglary and investigation down at the station. I asked him if there was anything he wanted to tell me before he went to the station. He stated with tears in his eyes that [he had] broken into a house, a green house down the street, with his brother Tim who boosted him through the window and his brother had let him in the

---

[3]The officers were granted permission to search defendants' car. A search of the vehicle yielded nothing although the officers detected the odor of marijuana and so advised defendants.

side door, and they were frightened off because someone came home." During the foregoing conversation Mark was seated in the patrol car.

Within an hour of their arrests defendants were interrogated at the police station. Mark repeated his admission and again incriminated his brother. The police purported to again admonish Timothy in the manner required by *Miranda* and informed him that Mark had admitted the burglary and had implicated his brother. Timothy then admitted that he had committed a burglary.

██ It is clear that the foregoing circumstances known to the officers before they arrested defendants fail to establish probable cause to arrest either defendant for any crime.[4] ██ "Cause for arrest exists when the facts known to the arresting officer 'would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.' [Citations.]" (*People* v. *Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) ██ The arresting officers in the instant case had no reason to believe that any crime had been recently committed in the neighborhood. They possessed only general information that the neighborhood had been experiencing a high number of burglaries. Although they were entitled to rely on information relayed to them by Hamilton (*People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Braun* (1973) 29 Cal.App.3d 949, 967 [106 Cal.Rptr. 56]), were aware that Timothy had removed his shirt since he was first observed by that officer, and had noted inconsistencies and nervousness in the responses of defendants to police questioning, the officers had no sufficient basis in support of a belief that a crime had been committed or that defendants were engaged in criminal conduct. The illegality of the arrests is thus manifest.

██ Notwithstanding the question of the legality of their arrests and the consequences which flowed therefrom, each defendant's guilty plea operated to remove such issues from consideration as a plea of guilty admits all matters essential to the conviction. (See *People* v. *Massey* (1976) 59 Cal.App.3d 777, 780 [130 Cal.Rptr. 581].) ██ Issues cognizable on an appeal following a guilty plea are limited to issues based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" resulting in the plea. (§ 1237.5; see also

---

[4]Because the arrests were illegal we need not consider the question of the propriety of the initial detention of defendants for questioning, of which defendants also complain, and accordingly we express no views thereon.

*People* v. *Ribero* (1971) 4 Cal.3d 55, 60-64 [92 Cal.Rptr. 692, 480 P.2d 308].) The issuance of a certificate of probable cause pursuant to section 1237.5 does not operate to expand the grounds upon which an appeal may be taken as that section relates only to the "procedure in perfecting an appeal from a judgment based on a plea of guilty." (*Id.,* at p. 63; see also *People* v. *Castro* (1974) 42 Cal.App.3d 960, 965 [117 Cal.Rptr. 295].)

Given the accused's guilty plea, an extrajudicial statement relating to his guilt of a charged crime does not, by reason of a claim that it was involuntarily or improperly induced, raise an issue on appeal based on "constitutional, jurisdictional or other grounds going to the legality of the proceedings" resulting in the plea.[5] On the other hand, a claim that the *plea* as distinguished from an extrajudicial statement was improperly induced would challenge the legality of the proceedings resulting in the plea and would thus be cognizable on an appeal pursuant to section 1237.5. ██ █ Defendants in the instant case, accordingly, cannot raise on this appeal claims that their extrajudicial statements were involuntarily induced. They may, however, attack on this appeal the validity of their pleas on the ground that because it was beyond the power of the trial court to bargain with defendants to preserve for appellate purposes the issues of involuntariness, they were improperly induced to enter such pleas. (See *People* v. *Ribero, supra,* 4 Cal.3d 55, 63; *People* v. *Rose* (1959) 171 Cal.App.2d 171, 172 [339 P.2d 954].) We conclude that the judgments must be reversed because defendants' pleas were induced by misrepresentations of a fundamental nature.[6] (See *Brady* v. *United States* (1970) 397 U.S. 742, 755 [25 L.Ed.2d 747, 760, 90 S.Ct. 1463].)

---

[5]We are aware that we may have contributed to some confusion in this area. In *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1] we stated that the issue of the propriety of a denial of a pretrial motion to suppress an alleged involuntary statement could not be raised on appeal as the defendants who had pleaded guilty had not sought certificates of probable cause. (*Id.,* at pp. 765-766.) Such statement in *Hill* is overruled to the extent that it implies that the issue would have been reviewable had the defendants obtained a certificate of probable cause.

[6]We distinguish the procedure provided by statute whereby an accused may preserve for appeal the issue of the propriety of a denial of a motion to suppress evidence resulting from a claimed unlawful search and seizure. (§ 1538.5, subd. (m).) Because the statute provides for preserving the issue the accused is not required to seek a certificate of probable cause in order to raise the issue on appeal from a judgment entered upon his guilty plea. (Cal. Rules of Court, rule 31(d).) Some confusion has emerged, however, as to the availability of a motion pursuant to section 1538.5 to suppress an extrajudicial statement claimed to have been involuntarily made. That section "has no part in protecting against Fifth Amendment infringements" and may be invoked to suppress evidence "only where there has been a search and seizure." (*People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733-734 [125 Cal. 798, 542 P.2d 1390].) However, an admission or confession which is nevertheless the *product of an unlawful search and*

Because the question of the bearing of defendants' illegal arrests on the admissibility of their extrajudicial statements will likely be presented again should defendants be retried, we deem it appropriate to express our views thereon. In *Brown* v. *Illinois, supra,* 422 U.S. 590, the accused after being arrested without probable cause and receiving the admonitions required by *Miranda* v. *Arizona, supra,* 384 U.S. 436 made a confession. The United States Supreme Court, construing its holdings in *Wong Sun* v. *United States, supra,* 371 U.S. 471, reasoned that the extrajudicial statements, unless demonstrated by the prosecution to be otherwise, were the product of an illegal invasion and that exclusion of the statements was necessary in order to protect Fourth Amendment guarantees in two respects: deterrence of lawless conduct by law enforcement officers, and preservation of judicial integrity. (*Brown* v. *Illinois, supra,* 422 U.S. 590, 599-600 [45 L.Ed.2d 416, 424-425].) The court did not, however, foreclose to the state an opportunity to demonstrate that a particular statement was not in fact a product of the illegality. Thus in *Wong Sun* a statement was held inadmissible because it had been elicited from a defendant contemporaneously with an unlawful arrest, but a statement taken from a second defendant, also unlawfully arrested, was held to be admissible because that defendant had voluntarily returned several days after his arraignment and release to confess his involvement in the criminal conduct for which he had been arrested. The court thus stated in *Brown* that it had held in *Wong Sun* that "the connection between his unlawful arrest and the statement 'had "become so attenuated as to dissipate the taint." (Citation.)' " (*Id.,* at pp. 598-599 [45 L.Ed.2d at p. 424].)[7]

---

*seizure* may be challenged on a motion pursuant to section 1538.5. (*Id.*; see also *People* v. *Massey, supra,* 59 Cal.App.3d 777, 780-782.) It thus may have been urged in the instant case, as hereinafter appears, that particular misconduct of which the extrajudicial statements were the tainted fruit were Fourth Amendment infringements, namely the illegal arrests, and that the statements should have been suppressed on a motion or motions pursuant to section 1538.5. Notwithstanding some confusion as to the precise grounds on which the motion to suppress was urged, on our review of the record we conclude that defendants sought to suppress the statements only on the nonstatutory ground that they were involuntarily induced contrary to Fifth Amendment protections. We have dealt with the record accordingly and the issue of the voluntariness of the statements was thus not preserved for dispositive appellate review.

[7]In *Wong Sun* the court had explained its rationale in the following language: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]" (*Wong Sun* v. *United States, supra,* 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456].) It also declared that the extrajudicial statement which it held to be inadmissible did not result from " 'an intervening independent act of a free will' " (*id.,* at

■ When, as is claimed by the People in the instant case, *Miranda* admonitions are given to a suspect between the time of an arrest claimed by him to be without probable cause and the time of a subsequent extrajudicial statement of an incriminating nature, constitutional requirements for admission of the statement are not necessarily fully satisfied. *Miranda* warnings are intended to protect Fifth Amendment rights against "the compulsion inherent in custodial surroundings." (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 458 [16 L.Ed.2d 694, 714].) Although the Fourth and Fifth Amendments are said to share an intimate relationship (*Boyd* v. *United States* (1886) 116 U.S. 616 [29 L.Ed. 746, 6 S.Ct. 524], a *Miranda* warning after an invasion in violation of the Fourth Amendment proscriptions does not necessarily remedy the unlawful violation or immunize the fruit which may thereafter become the product of that illegality for the reason that the Fourth Amendment serves interests and policies apart from those served by the Fifth Amendment and *Miranda* admonitions. In *Brown* the court declared: ". . . even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint' [Citation]." (*Brown* v. *Illinois, supra,* 422 U.S. 590, 601-602 [45 L.Ed.2d 416, 425-426].)

The court concluded that "the question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances [citation], and, particularly, the purpose and flagrancy of the official misconduct are all relevant. [Citation.] The voluntariness of the statement is a threshold requirement. [Citation.] And

p. 486 [9 L.Ed.2d at p. 454]) as, apparently, was true in the case of the statement which it held to be admissible. (See also *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 767-768 [44 Cal.Rptr. 313, 401 P.2d 921].)

the burden of showing admissibility rests, of course, on the prosecution." (*Id.,* at pp. 603-604 [45 L.Ed.2d at p. 427].)[8]

■ In applying the foregoing test to the facts of the instant case, we are compelled to the initial conclusion that Timothy's confession and Mark's second confession, both made at the police station, were direct products of Mark's initial statement made at the time and place of his arrest. That statement was a full confession and implicated both defendants. Mark's second confession must be deemed to have followed from the compulsion of the first and did not further incriminate him. (See *People* v. *Brommel* (1961) 56 Cal.2d 629, 634 [15 Cal.Rptr. 909, 364 P.2d 845].) Timothy had refrained from making any statement until told that he had been incriminated by Mark's statements. (Cf. *Brown* v. *Illinois, supra,* 422 U.S. 590, 604-605 [45 L.Ed.2d 416, 427-428].) The crucial inquiry therefore is whether Mark's initial statement was obtained by exploitation of the illegality of his arrest.[9]

We note first that prior to eliciting Mark's first statement *Miranda* warnings were given and Mark waived his right to remain silent and to an attorney. We note also that the illegal police conduct in *Brown* was more purposeful and flagrant than that in the instant case.[10] These factors, however, fail to persuade us on balance that Mark's confession was not obtained by exploitation of his illegal arrest. Within minutes of

---

[8]In *People* v. *Johnson* (1969) 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366] we distinguished between a confession following an unlawful arrest as in the instant case and a confession following a confrontation of the defendant with illegally seized physical evidence. (*Id.,* at p. 552.) Subsequently, *Johnson* has been cited as authority for the proposition that "the real thrust of the inquiry [into the admissibility of a confession following an illegal arrest] is *voluntariness.*" (*People* v. *Dominguez* (1971) 21 Cal.App.3d 881, 885 [99 Cal.Rptr. 42], italics in original; see also *People* v. *Magana* (1969) 272 Cal.App.2d 388, 390 [77 Cal.Rptr. 436].) In light of our instant holdings as compelled by *Brown* we disapprove *Dominguez* and *Magana* and implications which may be inferred from language in *Johnson* insofar as there is any conflict with the views expressed herein.

[9]Because we conclude that Timothy's confession was obtained contrary to the Fourth Amendment proscriptions we need not address his further contention that the statement was elicited contrary to *Miranda* and *Fioritto* (*People* v. *Fioritto* (1968) 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625]) proscriptions.

[10]In *Brown* two police officers in the course of investigating a murder obtained the name of Brown who was identified to them as an acquaintance of the victim but not as a suspect. The two officers then broke into Brown's apartment. Brown arrived during the course of the break-in and ascended the stairs to his apartment. An officer inside the apartment pointed a gun at Brown and told him he was under arrest. Another officer with a gun came up from behind Brown. The officers repeatedly testified that the purpose of the arrest was investigatory. Brown confessed at the station house within less than two hours of the illegal arrest. (*Brown* v. *Illinois, supra,* 422 U.S. 590, 592-596 [45 L.Ed.2d 416, 420-423].)

that arrest Barbara told Mark that he was to be taken "to jail for burglary and investigation down at the station." Mark's confession "with tears in his eyes" immediately followed upon inquiry whether there was "anything he wanted to [say] before he went to the station." It is Barbara's own testimony which establishes that Mark understood he was to be taken to jail before he was asked if he had anything further to say. Even more revealing is Garcia's testimony that after eliciting the initial confession from Mark the officers went back to Timothy to ask him if he would like to make a statement "before we take you to the station." Garcia further testified: "It was such a great line with Mark we thought we would use it with Timothy."

Finally, there is no suggestion of any intervening independent act of a free will or other circumstance which could have served to attenuate the taint of the unconstitutional arrest and motivate the confessions. The only reasonable conclusion on the record is that Mark confessed in response to the fact that he was in illegal custody and subjected to pressure from police officers who pressed him to talk before he was to be taken to the police station and jail charged with the commission of burglary.

On the record before us, the People have failed to sustain their burden of demonstrating the admissibility of defendants' confessions.

The judgments (orders granting probation) are reversed as to each defendant and their pleas are set aside.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Sullivan, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.