[Crim. No. 29737. Second Dist., Div. Five. Aug. 9, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD RICHARDS, JR., Defendant and Appellant.

512

**COUNSEL**

John Stocker, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Alexander W. Kirkpatrick, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KAUS, P. J.—A two-count information charged defendant with burglary (count I) and forgery (count II). After a motion to suppress evidence pursuant to section 1538.5 of the Penal Code was denied, defendant withdrew his plea of not guilty and pleaded guilty to forgery. The burglary count was eventually dismissed. Defendant appeals from the judgment (order granting probation).

The only issue on appeal relates to the trial court's ruling on defendant's section 1538.5 motion. That motion rested on the premise that defendant's warrantless arrest was without probable cause and mandated suppression of later statements made by defendant to the police.

■ Section 1538.5 is a proper means for raising the issue that an admission or confession is the product of an unlawful arrest—a seizure of the person in violation of the Fourth Amendment. (*People* v. *Massey* (1976) 59 Cal.App.3d 777, 780-782 [130 Cal.Rptr. 581]; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896-897, fn. 6 [135 Cal.Rptr. 786, 558 P.2d 872].) The illegal arrest does not, however, necessarily taint any statement thereafter made. *Brown* v. *Illinois* (1975) 422 U.S. 590, 604 [45 L.Ed.2d 416, 428, 95 S.Ct. 2254], permits the People to shoulder the burden of proving that the statement is not a product of the primary illegality. (See also *People* v. *DeVaughn, supra,* 18 Cal.3d at p. 897.)

We review the proceedings at the section 1538.5 motion with these principles in mind. On April 29, 1976, defendant and one Baptiste entered the premises of Convenience, Incorporated., a check-cashing establishment. Defendant was known to Mrs. Cannon, the cashier, to whom he introduced Baptiste. Baptiste presented a check which aroused Mrs. Cannon's suspicions. She took it to the office of Mr. Allen, the owner-manager. Allen telephoned the bank on which the check was written and was told that it was stolen. He called the police "[t]o have the person presenting the check interrogated as a suspect for forgery." Officer Hrehor arrived. He saw Baptiste standing by the teller's window and defendant sitting down. Mrs. Cannon told him that Baptiste had handed her a check which she had given to Mr. Allen. He talked to Allen, who told him what he had learned on the telephone. He believed that he was told by Mrs. Cannon that defendant and Baptiste had entered together, but he was not told that defendant had introduced Baptiste to Mrs. Cannon. Nevertheless, he arrested defendant as well as Baptiste. Mrs. Cannon denied that she had made the arrest. Allen was quite emphatic that he had not. He testified that in cases of this nature, he merely calls the police and asks them to talk to the suspect and come to their own conclusion.

After defendant and Baptiste were arrested, they were turned over to an Officer Lennox. He took both to the bunco forgery division and "gave them their rights, constitutional rights, . . ." When the prosecutor started to go into specifics, the defense successfully objected on the ground that the only issue was whether defendant had been legally arrested and that

if the arrest was illegal, "it's clear that the statement would be the fruit of the poison [*sic*] tree; so I am saying that the statements they made have absolutely no bearing upon the legality of the arrest." The court sustained the objection.

Later the court ruled that the arrest was legal.

■   Both rulings were clearly erroneous. Defendant was arrested on nothing but information that he had entered the establishment at the same time as Baptiste. The police were not even informed that the two were acquainted, let alone that defendant had introduced Baptiste to Mrs. Cannon. As far as the record shows, Officer Hrehor arrested defendant solely because he had entered the premises at the same time as a person who then tried to pass an apparently forged instrument.

The trial court recognized that the arrest could not be validated on facts made known to the police, but based its ruling on a fiction: that what really happened was that Allen had made a valid citizen's arrest. Leaving aside that Allen had even less probable cause than the police as far as defendant is concerned—he had not even been told that defendant and Baptiste had come in together—the plain fact is that Allen had gone out of his way not to make the arrest but to leave the decision whether or not to arrest up to the officers. Undoubtedly, a private person who desires to make a citizen's arrest may request a police officer to perform the physical act of taking the suspect into custody (Pen. Code, § 839; *People* v. *Campbell* (1972) 27 Cal.App.3d 849, 854 [104 Cal.Rptr. 118]), but there must be some evidence to that effect. Here there was none.

■   The error does not, however, call for a reversal. It was neutralized when defense counsel successfully urged that the only issue was the legality of his client's arrest. He was palpably wrong. An illegal arrest, alone, is utterly irrelevant. (*People* v. *Valenti* (1957) 49 Cal.2d 199, 203 [316 P.2d 633].) All that matters is whether the illegal arrest resulted in tainted evidence. While an incriminating statement given after an illegal arrest is presumed to have been obtained in violation of the suspect's Fourth Amendment rights, the People must be permitted to prove "that a particular statement was not in fact a product of the illegality." (*People* v. *DeVaughn, supra,* 18 Cal.3d 889, 897; see *Brown* v. *Illinois, supra,* 422 U.S. 590, 604.) Since defendant himself asked for the erroneous ruling which prevented the People from sanitizing defendant's statement or statements, he was left with nothing but an illegal arrest.

■ A final issue is the one which defendant's appellate counsel is formulating as he reads this opinion: that trial counsel was constitutionally ineffective and reduced the case to a "farce and a sham" when he secured the erroneous ruling excluding evidence concerning defendant's statement. On this record, however, such ineffectiveness is not demonstrated. Trial counsel may have been fully aware of the circumstances surrounding the obtaining of his client's statement and anticipated that it would be held admissible in spite of any illegality of the arrest—which at the time of the successful objection had not yet been ruled on. He had every reason to believe that the arrest would be held illegal and may have hoped that the trial court would ignore the rule that an illegal arrest alone is not the basis for excluding any evidence. Indeed, the court's ruling on the defense objection proved that his hopes were well founded.

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

Petitions for a rehearing were denied September 2, 1977, and appellant's petition for a hearing by the Supreme Court was denied October 6, 1977.