[Crim. No. 21693. First Dist., Div. One. Sept. 4, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW JOHNSON, Defendant and Appellant.

COUNSEL

Michael G. Regan, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THE COURT.*—Appellant Andrew Johnson was charged in a nine-count information filed in the Santa Clara County Superior Court with six counts of burglary in violation of Penal Code section 459, one count of attempted burglary in violation of Penal Code sections 664 and 459, and two counts of possession of stolen property in violation of Penal Code section 496. Two prior felony convictions also were alleged.

Following denial of appellant's Penal Code section 995 motion to dismiss, appellant withdrew his previous not guilty pleas and entered a plea of guilty to burglary (count one), attempted burglary (count eight), and possession of stolen property (counts six and nine), and admitted the two prior felony convictions. The remaining counts were ordered dismissed.

Appellant's sole contention on appeal is that the trial court erred in denying his Penal Code section 995 motion because the evidence against him was the tainted product of an illegal arrest.[1]

---

*Before Racanelli, P. J., Elkington, J., and Grodin, J.

[1]The People do not contest the propriety of this procedure for challenging the validity of a warrantless arrest and subsequent seizure of evidence, conceding that *People* v. *Lilienthal* (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706] controls. We observe that *Lilienthal* dealt with the issue whether it was necessary under Penal Code section 1538.5, subdivision (m), for a defendant to raise a Fourth Amendment claim exclusively by a suppression motion rather than a dismissal motion when defendant had previously moved to suppress "'at some [preliminary] stage of the proceedings.'" (*Id.*, at p. 896.) We question whether *Lilienthal* permits assertion of the Fourth Amendment claim through a motion to dismiss under Penal Code section 995 where, as here, there was no prior motion "for the return ... or the suppression of the evidence." (Pen. Code, § 1538.5, subd. (m).) Arguably such a procedure would deprive the People of

On the evening of January 11, 1980, Mr. and Mrs. Dana Weatherford were watching television in their home on Denali Way in San Jose. Hearing a loud thud from an empty bedroom, the Weatherfords ran to their front room window and observed a man run down the street. In the light of a street lamp, Mr. Weatherford saw that the man was wearing a beanie, dark jacket and light trousers, and was carrying a tiny club, like a nightstick, about 10 to 12 inches long. Mrs. Weatherford called police.

While his wife was still on the phone, Mr. Weatherford saw the same man walking back up the street. Mr. Weatherford got into his car and drove around looking for the man. Observing him on Lanai Avenue, Weatherford passed the man twice and then returned home.

Meanwhile, San Jose Police Officer Michael Schembri responded to the Weatherfords' call. En route to the Weatherfords' home, he saw a man conforming to the police radio description of the suspect walking away from the general area of the Weatherfords' house. Officer Schembri instructed Officer Bense, who was following, to stop the man, which Bense did.

Officer Schembri arrived at the Weatherfords' just after Mr. Weatherford returned home from looking for the suspect. Weatherford gave Officer Schembri a confirmatory description of the suspect and said, "[Y]ou just passed the suspect, he's over there." Realizing that the person described was the man Officer Bense had detained, Officer Schembri returned to the site of the detention. The officers arrested appellant for prowling, handcuffed him and conducted a pat-search. The officers then transported appellant to the Weatherfords' for the purpose of having him placed under citizen's arrest. Weatherford identified appellant as the prowler and made a citizen's arrest.

Following these events a search warrant was executed for search of appellant's apartment, and a number of area residents identified appellant in a photo lineup as the perpetrator of recent burglaries. Evidence admitted at appellant's preliminary hearing included rolls of pennies removed from him at the time of the pat-search, items removed from his home pursuant to the search warrant, and the in-court identification of appellant by Mr. Weatherford and two other witnesses.

---

any "opportunity to present [supporting] evidence . . . in the preliminary hearing." (22 Cal.3d at p. 896, fn. 5.) In light of the People's concession, however, we do not reach that question here.

■ Appellant contends that his arrest by the police officers for the misdemeanor offense of prowling (Pen. Code, § 647, subd. (g)) was unlawful because (1) the offense was not committed in the officers' "presence" as required by Penal Code section 836, subdivision 1, and (2) the arrest was not a valid citizen's arrest (Pen. Code, § 837, subd. 1) because there is no evidence to support the conclusion that the citizen, Mr. Weatherford, requested the officers' assistance in effecting the arrest (Pen. Code, § 839; *People v. Richards* (1977) 72 Cal.App.3d 510, 514 [130 Cal.Rptr. 158]).

■ It is well established that the power to arrest for commission of a misdemeanor is dependent on the offense having been committed in the arresting person's "presence." (Pen. Code, § 836, subd. 1; *In re Alonzo C.* (1978) 87 Cal.App.3d 707, 712-713 [151 Cal.Rptr. 192].) ■ It is equally well established that a citizen in whose presence a misdemeanor has been attempted or committed may effect a citizen's arrest (Pen. Code, § 837, subd. 1), and in so doing may both summon the police to his aid (Pen. Code, § 839) and delegate to police the physical act of taking the offender into custody (Pen. Code, § 839; *People v. Sjosten* (1968) 262 Cal.App.2d 539, 544 [68 Cal.Rptr. 832]).

■ As the court in *People v. Richards, supra,* 72 Cal.App.3d 510, held, in order to validate a police officer's arrest as a citizen's arrest, there must be some evidence to the effect that the citizen requested the police officer to perform the physical act of taking the suspect into custody. (72 Cal.App.3d at p. 510.) The citizen's request need not, however, be express, but may be implied by the citizen's conduct in summoning police, reporting the offense and pointing out the offender. (See *Green v. Department of Motor Vehicles* (1977) 68 Cal.App.3d 536, 541 [137 Cal.Rptr. 368].)

Weatherford's actions in summoning police, following the suspect, pointing the suspect's whereabouts out to police, and thereafter effecting a citizen's arrest, reasonably support the inference that it was his intention that the prowler be arrested (cf. *Green v. Department of Motor Vehicles, supra*) and that had he known at the outset that it was necessary for him to effect the arrest, he would have delegated that authority to the police, as the law allows him to do (*People v. Sjosten, supra,* 262 Cal.App.2d 539).

■ The remaining question, then, is whether an otherwise valid citizen's arrest is vitiated by the fact that police transported the suspect-ar-

restee to the citizen, rather than the reverse. *Green v. Department of Motor Vehicles, supra*, suggests not. In that case a citizen who had observed the defendant driving her car in an erratic manner followed her to her home where she parked the car, then located a police officer to whom he reported his observations. Thinking "he had done all he need do," the citizen then went home. (68 Cal.App.3d at pp. 539, 541.) Rejecting the contention that the police exceeded their authority in ordering the defendant out of her car and administering field sobriety tests before the citizen-witness, whom they had called back to the scene, arrived and "uttered the magic words of arrest" (*id.*, at p. 542), the court stated: "[T]he police were acting as agents assisting in effectuating [the] citizen's arrest, ... The entire sequence of events beginning when [the citizen] decided to arrest respondent and went to get help constitutes the arrest [citations]." (*Ibid.* [Alternative holding.])

Similarly, the entire sequence of events, from Weatherford's report to police, appellant's initial "arrest" by the officers and transportation to Weatherford to effectuate the citizen's arrest, consuming as it did little more than 10 minutes (cf. *Green v. Department of Motor Vehicles, supra*, 68 Cal.App.3d at p. 541; *Jackson v. Superior Court* (1950) 98 Cal.App.2d 183 [219 P.2d 879]), can reasonably be viewed as constituting a single valid arrest. The principle underlying *People v. Harris* (1975) 15 Cal.3d 384, 390-391 [124 Cal.Rptr. 536, 540 P.2d 632], and related cases, that absent exigent circumstances a transportation inflicts too great an intrusion on the liberty of a suspect whom police lack probable cause to arrest, has no application when, as here, the police have probable cause to believe that the suspect committed an offense, but are prevented by statute (described as "technicalities" in *Green v. Department of Motor Vehicles, supra*, 68 Cal.App.3d at p. 541) from themselves making the arrest.

Weatherford having impliedly summoned the police to his aid, the officers' assistance in effectuating the arrest did not thereby invalidate it. The arrest having been legal, it is unnecessary to address appellant's further contention that the evidence obtained therefrom was impermissibly tainted.

The judgment is affirmed.

A petition for a rehearing was denied October 2, 1981.