Filed 12/20/13  P. v. Johnson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RICHARD GERALD JOHNSON,<br><br>        Defendant and Appellant. | A138274<br><br>(San Mateo County<br>Super. Ct. No. SCO76692) |

Appellant, Richard Gerald Johnson, appeals from the judgment and sentence following a plea of no contest to possession of cocaine for sale.  His court-appointed attorney has filed a brief raising no legal issues and requesting this court to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  As the appeal is based solely on grounds occurring after entry of the plea, and does not challenge the validity of the plea, it is authorized by rule 8.304(b)(4)(B) of the California Rules of Court.

**FACTS AND PROCEEDINGS BELOW**

On November 13, 2012 (all dates are in that year unless otherwise indicated), the San Mateo County District Attorney filed an amended information alleging that on August 3, appellant possessed cocaine base for sale.  One strike prior and other prior convictions were also alleged.  (Health & Saf. Code, § 11351.5; Pen Code, §§ 1170.12, subd. (c)(1), 1203.07, subd. (a)(11), 1203, subd. (e)(4), 667.5, subd. (b); Health & Saf. Code, §§ 11370, subd. (a) and 11370.2, subd. (a).)

1

On November 14, appellant filed a motion to suppress the evidence seized during a warrantless search of his vehicle on August 3. A contested hearing was held on that motion on November 29, and at the conclusion of that hearing the motion was denied.

The facts relevant to this appeal were elicited at the suppression hearing. South San Francisco Police Sergeant Danny Gil testified that on August 3, 2011, at approximately 10:45 p.m., he and Officer Molyneux were patrolling in East Palo Alto near the intersection of Bay Road and Paloverde Road. A 1988 Cadillac was 20 to 30 feet in front of them. Although their headlights were pointed directly at the rear of the car, the officers were unable to read the rear license plate. Aware that increasing numbers of people were spraying chemicals on their license plates to reduce the reflection therefrom, which prevented the plates from being read by cameras at red lights, or those used at bridge tolls, Gil said he and Officer Molyneux stopped appellant's car because such alteration of a license plate violated "Vehicle Code section 5201 (g)."[1] After examining the plate, Gil believed it had been altered. During their contact with appellant, the officers were able to "locate and seize the contraband that forms the basis of the charges involved in the case."

The license plate, which was placed in evidence, was legible in the normal light of the courtroom. However, Gil testified that it could be read in the dark of night only when a light was shined on the plate which "bounced back" because of the reflective material covering the plate. Gil testified that appellant's rear plate had been altered. Certain parts appeared "faded" and there was "blackness around the number '2', the first letter of the

[1]Pursuant to amendment of Section 5201 effective January 1, 2013, the substance of what was at trial section 5201, subdivision (g), is now contained in section 5201, subdivision (c), providing, "A casing, shield, frame, border, product, or other device that obstructs or impairs the reading or recognition of a license plate by an electronic device operated by state or local law enforcement, an electronic device operated in connection with a toll road, high-occupancy toll lane, toll bridge, or other toll facility, or a remote emission sensing device, as specified in Sections 44081 and 44081.6 of the Health and Safety Code, shall not be installed on, or affixed to, a vehicle." (See, Stats. 2003, ch. 594, § 28 (S.B. 315); Stats. 2012, ch. 702, § 3 (A.B. 2489).) In addition, subdivision (a) of the statute provides, "License plates shall at all times . . . be maintained in a condition so as to be clearly legible."

license plate, as well as black cracking or veins going throughout the license plate. The 'California' on top is no longer red, but rather a pinkish color and also faded. The blue coloring on the letters and numbers of the license plate has also been faded, faded out. [¶] And that's why it was so difficult and impossible to read the license plate at night with headlights on the rear plate from a distance of 20 to 30 feet."

On cross-examination, Officer Gil testified that he did not test the license plate to determine whether it was ever covered by a reflective seal. He also stated that the Cadillac was not weaving and the lamp that illuminated the plate was working. He additionally allowed that the surface of a license plate "can be affected by a lot of things," such as salt water, fog, and age.

Defense counsel argued strenuously that there were many reasons the surface of the plate had faded and the letters and numbers no longer as easy to read as they once had been, and there was no evidence the plate had been deliberately altered in any way by appellant or by anyone else. Nevertheless, stating that "I don't find this is a particularly close case," the court concluded that "the officer definitely had a reasonable suspicion to stop the vehicle for several violations. He doesn't need to know for sure, but just a reasonable suspicion."

On November 29, 2012, pursuant to a plea agreement, appellant pleaded no contest to possession of cocaine base for sale, admitted a strike and probation ineligibility allegation (Pen. Code, § 1203.07, subd. (a)(11)); and admitted three prior drug-related sales charges (Health & Saf. Code, § 11370.2, subd. (a)); in exchange for a 14-year ceiling and leaving it open to the court to strike the strike prior.

The trial court found a voluntary and knowing waiver of rights, and ordered the filing of appellant's written waiver. The court found that the police report, lab report, preliminary hearing transcript, and review of prior convictions collectively provided a factual basis for the plea. The remaining priors and special allegations were dismissed.

At the sentencing hearing on March 6, 2013, and after denying appellant's motion to dismiss the strike prior, the court sentenced appellant to 14 years in state prison; that is, it imposed the midterm of four years for possession of cocaine base for sale, doubled

pursuant to the "two-strikes" law, plus three years, to be served consecutively, on each of the two drug-sale priors. The court imposed a restitution fine of $280, and a parole revocation fine in the same amount, suspended. Appellant was awarded custody credits in the amount of 432 days (216 days actually served and 216 days for good time/work time).

A timely notice of appeal was filed on April 2, 2013, challenging denial of the motion to suppress. On August 28, 2013, after his counsel filed a *Wende* brief, appellant filed a supplemental letter brief in propria persona.

## DISCUSSION

Where, as here, specific issues are raised by an appellant himself in a *Wende* proceeding, by filing supplemental contentions, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 124.) Because appellant pled no contest to the offense, the scope of the reviewable issues is restricted to matters based on constitutional, jurisdictional, or other grounds going to the legality of the proceedings leading to the plea; guilt or innocence are not included. (*People v. DeVaughan* (1977) 18 Cal.3d 889, 895–896.)

Appellant's pro per brief raises three issues.[2]

The first appears to be that he was not provided effective assistance of counsel during the plea negotiation process and did not waive his rights and enter his plea knowingly and voluntarily. Emphasizing the asserted unfairness of the offer appellant was ultimately forced to consider, which was more onerous than that earlier presented in this case and another assertedly comparable cases he does not describe,[3] appellant

---

[2]Although, as will be seen, appellant's supplemental letter brief challenges the stop of his car, he did not challenge the subsequent search in the trial court or in his supplemental letter brief in this court. We do not know, but assume this is because he was subject to a warrantless search as a condition of probation or parole.

[3]The other case appellant refers to was in San Francisco. Without describing the charges in the case, appellant states that the San Francisco District Attorney "offer me ten years with 1/2 time. 6 years [suspended]—4 years with 1/2 time. 2 years in the [county] Jail. No pen[itentiary] time. That's what he told me in San Francisco Court."

4

suggests he was blindsided by, and did not understand, the prosecutor's decision to withdraw a previous offer and replace it with one much more severe. The relevant facts are as follows. After Judge Jonathan E. Karesh, who conducted the suppression hearing, denied appellant's suppression motion, he described the offer made to appellant by the district attorney and approved by Judge Graig L. Parsons, the Criminal Presiding Judge; namely, that appellant would have to "plead guilty to [the] possession for sale charge, Count 1, admit a strike, admit [Penal Code section] 1203.07[, subdivision] (a)(11), which means no probation, and admit the three prior drug related sales charges. And the top was, according to Judge Parsons, a 14-year top and refer [to probation]. And he wrote '*Romero*.' I assume that means he would consider [granting a ] *Romero* [motion], but doesn't mean he guarantees it." When Judge Karesh asked appellant if he understood the terms of the plea, appellant responded: "No, I don't."

After the court recessed to provide time for appellant to discuss the matter with his attorney, and the case was recalled, appellant informed the court "that all the time I have been getting sentenced . . . I didn't know nothing about this three years priors. . . . Because like I have half time every time. I don't know nothing about no strike. . . . Every time I pleaded guilty, they gave me half time. I just got out of San Quentin. I ain't never had the strike. So, why is they bringing the strike thing up?" Defense counsel confirmed that neither he nor appellant was aware of the latest strike allegation at the time the plea offer was first presented by the district attorney. Counsel stated that the strike—which related to a 1981 offense—was only alleged after the case had been "carried over," during which time the district attorney apparently discovered the 1981 prior and amended the information to include it.

After the deputy district attorney pointed out that appellant had admitted the 1981 strike prior in a 1996 case, and appellant reiterated that "I don't know nothing about it," Judge Karesh stated that it was not he but Judge Parsons who approved the offer, and that his job was only to "make sure . . . that you understand [the offer]." Judge Karesh also

Appellant's idea that a plea agreement in a prior case establishes a norm that must be adhered to by prosecutors in subsequent prosecutions is manifestly untenable.

5

emphasized that "the bottom line is my understanding is that [the] offer expires today. So when you come on the trial date next week, it is likely going to be more than a fourteen year offer." After appellant stated that the district attorney had previously offered him "a ten year deal" and "I never turned it down," defense counsel stated that at the time of that offer the district attorney's office did not know about the strike but alleged it after it was discovered. Judge Karesh told appellant that "once they find the strike, then the penalties go way up." The deputy district attorney then stated that her office calculated that the strike exposed appellant to "a 34 year maximum total" but she had not confirmed the calculation.

After appellant pointed out that he was 60 years old, and 34 years would therefore effectively amount to a life sentence, and even 14 years was too much for mere possession, Judge Karesh allowed that appellant was "up against a rock and a hard place." Nevertheless, he felt unable to either predict exactly what would happen if appellant accepted the 14-year offer, or to grant appellant additional time to decide. After a brief recess to provide appellant an opportunity to confer with his attorney, counsel informed the court that appellant was prepared to formally enter the plea contemplated by the latest offer.

Judge Karesh then admonished appellant about the rights he would give up by entering his plea, after which appellant waived his rights, stipulated to a factual basis for his plea based on the police report, lab report, and preliminary hearing transcript, pleaded no contest to violation of Health and Safety Code section 11351.5, and admitted the charged prior convictions.

The process in which appellant entered his plea and admitted his prior convictions clearly conformed to the requirements of *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122, and the record contains no evidence indicating appellant's waiver of rights and plea was not informed and voluntary or that he received and was prejudiced by ineffective assistance of counsel in connection with the negotiated plea. So far as the record shows, appellant had not accepted the district attorney's initial offer, and appellant never contested the 1981 strike prior at issue.

6

Nothing in the record suggests appellant was not mentally competent at the time he negotiated and entered his plea; he was at all times represented by competent counsel who protected his rights and interests, and the sentence imposed on appellant as a result of his plea is authorized by law. For those reasons, and because he timely received the admonitions required by *Boykin v. Alabama, supra*, and *In re Tahl, supra,* we conclude that appellant waived his rights and thereafter entered his plea knowingly and voluntarily.

The second issue appellant presents, which may also embody an ineffective assistance of counsel claim, is that in entering his plea he relied on the representation of his attorney that doing so would not prevent him from challenging the legality of the proceedings leading to the plea. (Appellant implies he initially believed entering a plea would entail a complete waiver of the right to appeal, and ultimately agreed to enter the plea only after his lawyer informed him that doing so would not prevent him from challenging the validity of the plea.) Appellant now claims counsel betrayed him because "he never file no appeal for me" and, for that reason, apparently wants us to permit him to withdraw his plea. This argument is based on the false assumption that there is no appeal when counsel for an indigent appellant files a *Wende* brief, and we therefore reject it.

Appellant's last contention is that denial of his suppression motion was reversible error.[4] According to appellant, "Gil[,] the officer that stop me[,] stop me because I was a black man [riding] in a low rider Cadd. in E[ast] Palo Alto. They were stop[p]ing everybody that night. My plates are clear as day. I've been stop[p]ed at night and the

_____

[4]Penal Code section 1538.5, subdivision (m), which allows a defendant to seek further review of the validity of a search or seizure on appeal from a criminal conviction even though the conviction is predicated on a plea of guilty, "constitutes an exception to the rule that all errors arising prior to entry of a guilty plea are waived, except those which question the jurisdiction or legality of the proceedings. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 897.) Without deciding the matter, we will for present purposes indulge the questionable assumption that review of appellant's challenge to the detention, rather than the subsequent search, is within the ambit of the statutory authorization, because sustaining that claim would invalidate use of the product of the search.

police didn't say that they couldn't see my plates. That's a lie. They took my plates off my car that night. There was nothing on my plates. [I]t was a wrongful stop." We reject this argument because it mischaracterizes the issue and ignores the standard of review.

As Judge Karesh made clear, the issue at the suppression hearing was not whether the license plate had been altered in any material way, but whether the situation in which the officers stopped appellant's car presented reasonable cause to believe the condition of the rear plate on appellant's car violated the Vehicle Code. Officer Gil's testimony was that he and Officer Molyneux "could not read [appellant's] license plate at all." Officer Gil was vigorously cross-examined, but his asserted inability to read appellant's rear plate from a distance of 20 to 30 feet was not challenged. That statement supports Judge Karesh's conclusion that Gil believed the condition of the plate may have violated the Vehicle Code, and he therefore had reasonable cause to make the stop. A witness may be discredited by a showing of bias or interest, or self-contradiction, or other grounds of impeachment, or by the manner of testifying, or by inherent improbabilities in the testimony, so that the witness may be deemed unworthy of belief. However, in a case such as this credibility is almost always to be determined in the trial court. (See, e.g., *People v. Swanson* (1962) 204 Cal.App.2d 169, 173.) The inherent improbability of a witness's testimony may be used as a ground of reversal only where the testimony is so utterly unbelievable as to warrant that result (see, e.g., *People v. Headlee* (1941) 18 Cal.2d 266, 267; *People v. Carvalho* (1952) 112 Cal.App.2d 482, 489), and that clearly cannot be said of Officer Gil's testimony.

## DISPOSITION

For the foregoing reasons, we reject the claims advanced by appellant in his supplemental letter brief. Additionally, having independently examined the record in its entirety, we find no arguable issues warranting further briefing.

Accordingly, the judgment, including the sentence imposed, is affirmed.

_____

Kline, P.J.

We concur:

_____

Haerle, J.

_____

Richman, J.