Filed 9/5/14  P. v. Erickson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT GEORGE ERICKSON,<br><br>    Defendant and Appellant. | A141083<br><br>(Sonoma County Super. Ct.<br> No. SCR-634879) |

Appellant Robert George Erickson, who appeals from a judgment following a guilty plea, challenges the denial of a pre-plea motion to suppress evidence.  His court-appointed counsel has filed a brief raising no legal claims and asking this court to conduct an independent review pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738.  Counsel attests appellant was advised of his right to file a supplemental brief.  We have received no such brief.

### FACTS AND PROCEEDINGS BELOW

The pertinent facts were elicited at the suppression hearing conducted on November 6, 2013.

Santa Rosa Police Officer Josh Medeiros testified that about 8:15 p.m. on May 18, 2013, while dressed in full uniform and accompanied by Officer Rhodes and an unidentified  "civilian ride-along," he went to 1170 Clover Avenue in Santa Rosa to contact appellant.  Officer Medeiros believed appellant was on probation and knew he was a registered drug offender who used methamphetamine and heroin.  Medeiros had not received any instructions from any law enforcement authority to contact appellant,

1

and was not aware appellant was currently using or had recently used or possessed any controlled substance. The sole reasons he initiated contact with appellant were that he "thought" he was on probation and had "done a number of probation contacts for Mr. Erickson at that very residence a number of times" in the past. Medeiros advised the dispatch officer of his intention to check on appellant, but did not ask him or anyone else whether appellant was still on probation.

When he arrived at appellant's residence, Medeiros did not see a "No Trespassing" sign across the street from the entrance to the residence. Hollee Landreth, who Medeiros knew from past contacts was a co-tenant of the property, answered his knock on the door. Medeiros asked if appellant was home and she said he was. He then asked whether he could enter the house to speak to him and she said he could do so.[1]

Officers Medeiros and Rhodes and the "ride-along" entered the house and went directly to appellant's room, which Medeiros was familiar with as a result of previous contacts. Medeiros knocked on the door and appellant opened it between 18 inches and two feet, which permitted Medeiros to see a corner of the room. During the ensuing conversation, appellant remained standing in the bedroom while Medeiros stood in the hallway outside with Officer Rhodes and the ride-along. When Medeiros asked appellant whether he was still on probation, appellant said he was not. Officer Rhodes then performed a records check which confirmed that appellant was not then on probation.

Shortly after that, appellant opened his door a bit wider, allowing Officer Medeiros to view most of appellant's bedroom; specifically, the top of a dresser about four feet away, where he saw drug paraphernalia consisting of a burnt spoon and brown cotton ball. Either immediately before or after he saw these materials in plain view, Medeiros asked appellant whether he was still using drugs. After he had seen the paraphernalia but was still in the hallway, Medeiros asked appellant to sit on his bed and

---

[1] Under direct examination at the suppression hearing, Medeiros testified that he recalled telling Landreth that he came to the house in order to perform a probation search, but on cross-examination Medeiros was unable to recall whether he told her this.

inquired whether there were any drugs in the room. Appellant answered that there was methamphetamine, but no heroin.

When Medeiros asked appellant for permission to enter his room appellant stated that he preferred that he not do so. After Medeiros stated he could just write a warrant for search of the room, appellant permitted him access. Prior to entering the room, appellant had not drawn a weapon, and was conversing with appellant calmly. At no point did appellant ask him to leave, nor did Hollee Landreth. After appellant told him he could search the bedroom, Medeiros asked appellant to exit the room and then handcuffed him "so I could safely search the room." Medeiros then went to a nightstand in which he knew from prior contacts appellant "routinely keeps his methamphetamine." Opening a drawer, he found four bags of methamphetamine of varying weights. Medeiros then arrested appellant, transported him to the county jail, and later booked the evidence he had seized to the Department of Justice for further testing.

Testifying for the defense, Hollee Landreth, appellant's co-tenant, stated that she was hosting a barbecue on the deck in the backyard when Officer Medeiros arrived, and when alerted to the presence of the police at the front door she went there and opened it. She also stated that that there was a "No Trespassing" sign on a tree directly across the driveway that had been placed there by the landlord. Landreth, who had lived at the residence for more than a year, knew Officer Medeiros because he had previously been to the house on three occasions. On the prior occasions, Medeiros or other officers asked her to sit on the couch in the living room while they searched appellant's bedroom, a procedure that "became a normal routine." On this fourth visit, Medeiros asked her if appellant was home and she answered, "Yeah, his car's here. You could check." Because Medeiros "knew exactly where to go" she "let him in."

When asked whether Medeiros sought permission to enter the house, Landreth responded, "I don't know if it was so much permission. He asked if Robert was home, and I let him in. I mean, it was—he didn't say, 'May I enter?' or anything. But I said, 'Come on in.' "

3

When Landreth returned to the backyard, she saw another officer standing in the driveway, but didn't talk to him. She didn't see a third party with the police until they were about to leave.

Appellant testified that he was not on probation or parole on May 18, 2013, and had not been since January 26, 2013. When Officer Medeiros knocked on his bedroom door and announced "I'm here to do a probation search," appellant replied " 'I'm not on probation. You have no right to be here.' " Medeiros then told him, "[w]e'll see about that," and asked appellant for his identification. When supplied it, Medeiros gave it to Officer Rhodes.

On cross-examination, appellant acknowledged he told Medeiros that he possessed methamphetamine, that drug paraphernalia—a dirty spoon and a capped syringe—were sitting on top of the dresser, and that the dresser was "approximately five feet" from the open door at which he and Medeiros were standing. When asked whether "the person standing on the other side of the door could see that dresser," appellant answered, "If the door had been open far enough, yes. [¶] Well, not actually—there was objects, it camouflaged or covered the view, line of sight. It would not have been visible from the door, no." After the district attorney asked that the last statement be stricken, because "There's no question pending," the court observed that appellant "contradicted himself. The first answer was yes, and then the second answer was no. So I'm not going to strike it."

Arguing to the court, defense counsel emphasized that appellant "was in his own home, minding his own business, he was not on parole, not on probation, the officer was not responding to dispatch calling in and saying some crime had been committed, or there are neighbor complaints about noise for the party, anything to do with the residence or Mr. Erickson. If the officer had that hunch, the proper thing to do would have been to see if he was on probation well in advance of ever driving over to Mr. Erickson's home, where, as I said, Mr. Erickson should have been enjoying his expectation of rights of privacy." When asked by the court "[a]re you saying that [O]fficer [Medeiros] did not go to . . . Mr. Erickson's home to do a probation search?" counsel replied: "On the surface

4

he did.  But I think it's total pretext.  I think he's there to harass him, to try to get him evicted out of that house, to see if there's any criminality afoot, even though there's been no suggestion and no hint of any criminality afoot."

The district attorney maintained that the facts "show effective and lawful police work.  The officer went to the residence, spoke with a female whom he knew to live at the residence, had her consent to enter the home, went to where he knew Mr. Erickson's room was, knocked on the door, waited for Mr. Erickson to open the door, spoke with Mr. Erickson outside of Mr. Erickson's bedroom, and it was during that conversation that the officer developed probable cause to eventually search that bedroom, by virtue of Mr. Erickson's statements that he had methamphetamine on him, as well as the items in plain view; specifically, the needle, and I believe it was the spoon.  And it was based on those observations, then ultimately what the officer recovered, that led to the lawful arrest."

The trial court denied appellant's motion to suppress on the basis of its determinations that (1) Officer Medeiros went to appellant's residence to conduct a probation search "under the mistaken belief appellant was on probation"; (2) knocked on the door of the house and was granted admission by the co-tenant; (3) knocked on appellant's bedroom door and, before entering, learned appellant was not on probation; and (4) "didn't go into the room until after there was an admission to possession of methamphetamine and observation of some drug paraphernalia in plain view."

Defendant filed a timely notice of appeal.

### DISCUSSION

The scope of reviewable issues on appeal after a guilty plea is restricted to matters based on constitutional, jurisdictional, or other grounds going to the legality of the proceedings leading to the plea; guilt or innocence are not included.  (*People v. DeVaughn* (1977) 18 Cal.3d 889, 895-896.)

Pursuant to article I, section 28, subdivision (d), of the California Constitution, review of claims that evidence is inadmissible because it was obtained during an unlawful search, as appellant asserts, is generally governed by federal standards.  (*People v. Woods* (1999) 21 Cal.4th 668, 674.)

5

In denying suppression, the trial court expressly relied on *People v. Willis* (2002) 28 Cal.4th 22 (*Willis*), which it claimed stood for the proposition that "going to a residence under the mistaken belief that the person is actually on probation is an exception to the warrant requirement." This statement, which implies an erroneous belief in the applicability to this case of the good faith exception to the exclusionary rule, grossly misconstrues the opinion in *Willis*, which repudiates application of that exception to circumstances like those in this case.

In *Willis*, a police officer was told that the defendant was selling narcotics at a specified motel, checked a "parole book" indicating the defendant was on parole and therefore subject to a warrantless search, and called a parole officer who confirmed that was the case. The police officer and the parole officer went to the motel, entered the defendant's room when he opened the door, and announced their intention to conduct a parole search. The defendant informed them he had been discharged from parole and produced a certificate of discharge. While the parole officer went outside to check on the defendant's parole status, the police officer observed evidence of criminal activity, told the defendant he had enough evidence to obtain a search warrant, obtained the defendant's consent to search, and arrested the defendant when he found drugs on the premises. The defendant was convicted after the trial court denied his motion to suppress.

The Court of Appeal held that the initial entry into the motel room was unconstitutional because the police did not have a search warrant, the defendant was not on parole, and he did not consent to entry. It also rejected the Attorney General's argument that the exclusionary rule does not apply because the police relied in good faith on the information the defendant was on parole. Nevertheless, the Court of Appeal affirmed the denial of suppression on the ground "that the unconstitutional entry did not taint the police's subsequent reasonable actions that actually led to discovery of the evidence." (*Willis*, *supra*, 28 Cal.4th at p. 28.)

The Supreme Court agreed with the Court of Appeal's determination that the good faith exception to the exclusionary rule did not apply where police mistakenly believed

the defendant was on probation or parole and subject to a warrantless search condition (see *People v. Ramirez* (1983) 34 Cal.3d 541; *In re Arron C.* (1997) 59 Cal.App.4th 1365, 1369), but it nevertheless reversed the judgment of the Court of Appeal because it rejected its conclusion that the unconstitutional entry did not taint the police's subsequent conduct. Because a Fourth Amendment violation occurred when the officers entered the motel room, the Supreme Court found it irrelevant that the subsequent observations of the police officer may have established probable cause to support issuance of a search warrant.

However, while the trial court here clearly misapplied *Willis*, this case is factually distinguishable from *Willis* in a crucial respect. Unlike the situation in *Willis*, in which law enforcement officers entered the defendant's motel room without either obtaining consent or probable cause to support issuance of a search warrant, Medeiros remained in the hallway during his conversation with appellant and did not enter his bedroom until after appellant admitted possessing methamphetamine and acknowledged the presence of drug paraphernalia, which was in plain view. An officer may seize an object in plain view without a warrant provided that where, as here, the officer had a prior justification for the intrusion, is lawfully present in the place from which the object is viewed, the incriminating nature of the object is immediately apparent, and the accused consents to the entry occasioned by that perception and the need to effect the seizure. (See, generally, *Horton v. California* (1990) 496 U.S. 128, 135-137 and cases there cited.)

Additionally, the record provides no evidence supporting the contention of trial counsel that the conduct of Officers Medeiros and Rhodes was pretextual and motivated by a desire to harass him or have him evicted from his residence.

We have taken note of the many items "in the record that might arguably support the appeal" (*Anders v. California, supra*, 386 U.S. at p. 744), helpfully set forth by appellant's counsel in his *Wende* brief, for which we commend him, but find that, when considered in the light of the record evidence, none would support a tenable argument that the trial court erred in denying the motion to suppress.

Our review of the record also reveals that appellant's plea was taken by the court in compliance with *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122, he was represented by competent counsel who guarded his rights and interests, and the sentence imposed is authorized by law.

Our independent review having found no arguable issues that require further briefing, the judgment of conviction, including the sentence imposed, is affirmed.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Stewart, J.