188 Cal.App.4th 1501 (2010)
In re J.G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
J.G., Defendant and Appellant.
No. G042533.
Court of Appeals of California, Fourth District, Division Three.
October 6, 2010.
*1503 Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Melissa Mandel and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

*1504 OPINION
BEDSWORTH, Acting P. J.
Following the denial of his motion to suppress evidence (Pen. Code, § 1538.5), appellant pleaded guilty to possessing a deadly weapon with the intent to assault (Pen. Code, § 12024). He contends the motion was improperly denied because he was arrested without probable cause, but we disagree. "When, as here, the facts known to an officer are sufficient to constitute probable cause to arrest, the possibility of an innocent explanation does not vitiate probable cause and does not render an arrest unlawful. [Citation.]" (Johnson v. Lewis (2004) 120 Cal.App.4th 443, 453 [15 Cal.Rptr.3d 507].)

FACTS
About 4:00 p.m. on June 25, 2009, Anaheim Police Department Investigator Gustavo Maya and his partner Investigator Brown (no first name given in the record) were at 316 East Wilhelmina Street in Anaheim. They were investigating an earlier gang-related crime and, based on their police training, knew that area of the city to be turf claimed by a gang known as Anaheim Travelers City (ATC).
While standing in front of the residence, Maya saw four males running from Olive Street onto Wilhelmina toward Philadelphia Street. As soon as they turned the corner onto Wilhelmina, Maya heard someone shout "He's over there!" Maya recognized appellant as one of the four individuals. The two had previously spoken on multiple occasions at Anaheim High School, where appellant had told Maya that he was a member of ATC. The males ran past Maya and Brown on Wilhelmina, but the investigators were not wearing uniforms and the group did not appear to see them. Maya saw that some of the males were carrying objects as they ran. Appellant was holding a red brick and another individual was holding the plastic top of a lamp.
When the group reached Philadelphia Street, Maya saw one of the males point north. The males then ran northbound out of view on Philadelphia Street. Maya and Brown got into their unmarked police vehicle and followed the males up the street. The males were walking north on Philadelphia when the investigators approached them. Maya and Brown got out of their car, identified themselves as police officers, pointed their weapons at the group, and ordered them to get on the ground. The individuals dropped the items they were carrying and complied with the order. Maya discovered that, in *1505 addition to the brick and lamp he had seen earlier, a third individual had been carrying a rock. The fourth male did not have any object in his possession. Investigator Brown called for backup and all four individuals were arrested, handcuffed, and transferred immediately to the Anaheim Police Department. The police believed the group had been chasing someone, but could not locate a victim.
Once at the station, each individual was placed in a separate interview room. Maya entered the room containing the still handcuffed appellant, read him his Miranda[1] rights, and began questioning him about the incident. Appellant told Maya that he and the other three individuals had been standing in a nearby alley when a car drove up to their location. The driver began throwing gang signs from inside the vehicle. Appellant approached and the driver got out of the car, grabbed his waistband, and shouted a derogatory term used by ATC's rival gangs. Appellant believed that the driver probably had a gun in his waistband, so he backed away from the vehicle. The driver reentered the car and drove off. At that point the four males grabbed whatever objects they could find and attempted to locate the vehicle. Appellant believed that he and the other three individuals were headed toward it when they were detained.

DISCUSSION
(1) The only disputed issue in this case is whether appellant was lawfully arrested. There is no disagreement by the parties about whether an arrest took place, only whether it was lawful under the Fourth Amendment of the United States Constitution, which guards against unreasonable searches and seizures, and the Fourteenth Amendment of the United States Constitution, which applies this protection to the states.
(2) In order to comply with the law, an officer must have probable cause before making an arrest. (Dunaway v. New York (1979) 442 U.S. 200, 209 [60 L.Ed.2d 824, 99 S.Ct. 2248].) Probable cause has been defined in a number of different ways, including the Supreme Court's adjuration that "`[t]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which warrant suspicion.'" (Illinois v. Gates (1983) 462 U.S. 213, 235 [76 L.Ed.2d 527, 103 S.Ct. 2317], quoting Locke v. United States (1813) 11 U.S. 339, 348 [3 L.Ed. 364].) (3) The Supreme *1506 Court of California expressed its standard for probable cause in People v. Price (1991) 1 Cal.4th 324 [3 Cal.Rptr.2d 106, 821 P.2d 610], stating that probable cause "exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime." (Id. at p. 410.) Probable cause must be viewed in the totality of the circumstances, not based on any isolated event. Arrests which are made without probable cause "in the hope that something might turn up" are unlawful. (Brown v. Illinois (1975) 422 U.S. 590, 605 [45 L.Ed.2d 416, 95 S.Ct. 2254].) Even if something does in fact turn up, "a search is not . . . made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." (United States v. Di Re (1948) 332 U.S. 581, 595 [92 L.Ed. 210, 68 S.Ct. 222], fn. omitted.)
(4) Temporary detentions for questioning or investigation may be justified by circumstances falling short of probable cause. (Terry v. Ohio (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 88 S.Ct. 1868].) In order to justify such a detention, "`the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question.'" (People v. Loewen (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].) "`[T]he principal difference between a Terry detention and an arrest is the distinction between "suspicion that [a person] may be connected with criminal activity" [citation], and "probable cause to believe that the suspect has committed a crime."'" (In re Justin B. (1999) 69 Cal.App.4th, 879, 886-887 [81 Cal.Rptr.2d 852].)
(5) While there is no precise degree of certainty required for probable cause and each case presents unique circumstances, the Supreme Court's decision in People v. DeVaughn (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872] is instructive on the level of certainty required for probable cause as it relates to the instant case.
In People v. DeVaughn, supra, 18 Cal.3d 889, an officer observed two men running toward him when they left the street and ran between houses. There was no information that a specific burglary had recently taken place in that *1507 neighborhood, but there had been a high number in the last few months. The men were stopped by another officer who noticed that one of the men had taken off his shirt since he was last seen by the previous officer. The two defendants were then separated and questioned. When they appeared nervous and their stories failed to match, they were arrested and confessed to burglary. The court held that their arrests were illegal because the police did not have sufficient evidence to support the belief that the defendants were engaged in specific criminal conduct. As suspicious as their actions might have been, there was no evidence that tied them to the crime of burglary.
The case of In re Dung T. (1984) 160 Cal.App.3d 697 [206 Cal.Rptr. 772] also provides guidance. In Dung T., an officer received information about a robbery involving six young Vietnamese males. The officer located a vehicle matching the description of the car that was used in the robbery and arrested the eight Vietnamese males in the car at the time. The People conceded there was a lack of probable cause to arrest because no investigation had taken place between the stop and the arrest. The Court of Appeal agreed that there was justification for an investigatory stop based on the officer's knowledge of the suspects and vehicle involved in the robbery, but that there was not probable cause to believe that any one of the occupants was guilty of the robbery.
(6) Appellant argues that the precedent established in these cases demonstrates a lack of probable cause in his case. We disagree. "In dealing with probable cause . . ., as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (Brinegar v. United States (1949) 338 U.S. 160, 175 [93 L.Ed. 1879, 69 S.Ct. 1302], italics added.) The question is not whether Bertrand Russell or Stephen Hawkingneither of whom was ever asked to strap on a sidearm and chase gangsters down alleyscould resolve the issue with mathematical precision, but whether reasonable and prudent police officers could find these to bein the too often forgotten phraseology of Illinois v. Gates "circumstances which warrant suspicion." We find they could, and we further findas People v. Price, supra, 1 Cal.4th 324 requiresthat a reasonable and prudent man could entertain that suspicion honestly and strongly.
(7) Probable cause was lacking in DeVaughn because there were no facts or evidence to tie either man to the crime of burglary for which they were arrested. In the case before us today, the arresting officer directly observed appellant possessing an object which could be used as a deadly weapon. He also observed specific behavior which caused him, and which would cause a reasonable and prudent person in his circumstances, to entertain an honest and strong suspicion that a crime had been committed. The officer observed a *1508 brick in appellant's hand, heard a shout of "he's over there" which he believed to have come from one of the four males, and witnessed a gesture from one of the group directing the others northbound onto Philadelphia Street. Viewed collectively, there were clearly facts to suggest the group intended to use their rudimentary weapons to harm someone. Investigator Maya's knowledge that appellant was a member of a gang reasonably supported this analysis of the facts.
At this point, probable cause existed to arrest for the crime of possession of a deadly weapon with intent to commit assault. That the group slowed to a walk before being taken into custody is not dispositive and does not dissolve probable cause. The officers had already witnessed facts which established probable cause to believe the commission of this seldom cited statute had taken place.
Appellant insists this situation is indistinguishable from that which obtained in In re Dung T., supra, 160 Cal.App.3d 697, but in that case probable cause was lacking because the identities of the parties were not investigated prior to arrest. A robbery had taken place involving six males. When the vehicle used in the robbery was found, all eight occupants were arrested without any investigation into their identities. The court found no probable cause to arrest because, even if some of the occupants were in fact guilty of a crime, there was no investigation of their identities and innocent parties were indiscriminately arrested merely for being in the vehicle.
There is no possibility of mistaken identity here. Investigator Maya saw appellant and the other three males taking actions that subjectively and objectively appeared to be the commission of a crime and quickly moved to arrest them. It would be unreasonable to expect a police officer to do otherwise.
We recognize the closeness of this issue. We accept the possibility J.G. and his cohorts were chasing a rabbit or playing a game. But it must be remembered that we examine here not an issue of guilt, but an issue of probable cause. "Probable cause `"means less than evidence which would justify condemnation. . . . It [describes] circumstances which warrant suspicion."' [Citation.]" (Humphrey v. Appellate Division (2002) 29 Cal.4th 569, 573 [127 Cal.Rptr.2d 645, 58 P.3d 476].) We hold not that J.G. in fact intended to assault another human being, but that it was reasonable for the police to so suspect. Although the correctness of that conclusion is by no means pellucid, the nature of probable cause determinations is that they will always be judgments of what seems reasonable. Under the circumstances of this case, our judgment is that the officers acted reasonably and the arrest was supported by probable cause. The motion to suppress was properly denied.

*1509 DISPOSITION
The judgment is affirmed.
Fybel, J., and Ikola, J., concurred.
NOTES
[1] Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].