Filed 2/25/14  Modified and certified for publication 3/26/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. S.F., Defendant and Appellant. | G048087 (Super. Ct. No. DL041983) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Reversed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Amanda E. Casillas and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In February 2012, a one-count petition was filed to declare S.F. a ward of the juvenile court. The petition alleged that, in December 2011, S.F., who was 17 years of age at the time, unlawfully possessed marijuana for sale in violation of Health and Safety Code section 11359 (count 1).

S.F. appeals from the dispositional order sustaining the allegations of count 1 and declaring him to be a ward of the court under Welfare and Institutions Code section 602. He argues the juvenile court erred by denying his motion to suppress evidence obtained in a warrantless search of his bedroom. We agree. We conclude S.F. was arrested without probable cause for violating Penal Code section 594.2, subdivision (a) (section 594.2(a)),[1] and the evidence obtained from the search of his bedroom constituted fruit of the poisonous tree. Without the evidence obtained from the unlawful search of S.F.'s bedroom, the true finding on the allegations of count 1 cannot be upheld. Accordingly, we reverse the dispositional order.

## FACTS

The facts are taken from the evidence presented at the evidentiary hearing on S.F.'s motion to suppress, conducted in April 2012.

On December 17, 2011, Orange Police Officer Kurt Lawson, who was on patrol with Officer Moss, saw S.F. and another minor (Minor D.) running southbound across the eastbound lanes of Katella Avenue. S.F. and Minor D. were not using a crosswalk. Officer Lawson stopped S.F. and Minor D. for jaywalking.

---

[1] Section 594.2(a) states: "Every person who possesses a masonry or glass drill bit, a carbide drill bit, a glass cutter, a grinding stone, an awl, a chisel, a carbide scribe, an aerosol paint container, a felt tip marker, or any other marking substance with the intent to commit vandalism or graffiti, is guilty of a misdemeanor."

Officer Lawson asked S.F. if he had anything illegal on him. S.F. said he had a "streaker," which is an oil-based marker commonly used as a graffiti tool, and started to reach into his pocket to remove it. Officer Lawson did not know whether S.F. was carrying any weapons and told him not to reach into his pocket. From S.F.'s left trouser pocket, Officer Lawson removed a solid black marker. When Officer Lawson asked about the marker, S.F. replied that "he knew it was illegal to have and that people use them to vandalize property."

S.F. and Minor D. were placed under arrest, S.F. was handcuffed, and both were taken in the patrol car to their respective homes. En route, Officer Lawson asked S.F. if he had anything illegal in his bedroom. S.F. said he did. Officer Lawson did not say he intended to search S.F.'s bedroom.

Officers Lawson and Moss first drove to Minor D.'s home, which was searched for 20 to 30 minutes while Lawson and S.F. stayed in the patrol car. Officers Lawson and Moss then drove to S.F.'s home. City of Orange Police Officer Rene Guerrero, who had been called to assist as a Spanish translator, arrived at S.F.'s home. A police inspector named Valdez also arrived at S.F.'s home.

Officers Lawson, Moss, Guerrero, and Valdez together with S.F. approached the front door of S.F.'s home. Officer Guerrero knocked on the front door and asked S.F.'s father (Father) for permission to enter the home. Father opened the door and allowed the four officers to enter.[2] Once inside, Officer Guerrero explained to Father why the police officers were there and told him that S.F. had told one of the police officers there were illegal items in his room. Officer Guerrero asked Father for consent

---

[2] S.F. testified he cracked open the door to his home just enough so he could call to Father, but Officers Lawson and Moss walked inside before he had the chance to do so. According to S.F., Officer Guerrero had not arrived when Officers Lawson and Moss walked into the home.

to search S.F.'s room to retrieve any illegal items. Father told S.F. to open his room. After asking Father if he "had to," S.F. walked to his room and opened the door.[3]

In S.F.'s bedroom, the officers found marijuana, graffiti tools, and over $1,200 in cash.

At some point, S.F.'s mother (Mother) asked Officer Guerrero, "don't we have the right to tell them not to come in?" Officer Guerrero testified his usual response to such a question would be that "their cooperation was needed, and we did not have a right to go in there without their consent.'" He did not recall what he had said to Mother. S.F.'s sister testified she heard Officer Guerrero respond to Mother's question by saying, "it would be better for you guys to let us in now."

### THE MOTION TO SUPPRESS

Pursuant to Welfare and Institutions Code section 700.1, S.F. moved to suppress the evidence obtained as a result of the search of his bedroom. Following an evidentiary hearing, the evidence which we summarized in the prior section, the juvenile court denied the motion to suppress. The court found (1) S.F. was lawfully detained for jaywalking; (2) he was searched lawfully as a search incident to arrest; (3) he was lawfully arrested for possession of a streaker; (4) the testimony of Officer Guerrero established the police officers knocked on the front door of S.F.'s home and were granted consent to enter; (5) Father gave the officers "implied consent" to search S.F.'s bedroom; (6) Mother did question whether the officers could search S.F.'s bedroom; (7) although S.F.'s sister testified that Officer Guerrero responded to Mother's question by saying, "it would be better for you guys to let us in now," the sister did not hear the entire exchange; and (8) S.F. was not credible in his testimony that he felt he had no choice but to allow the police officers to search his bedroom.

---

[3] S.F. testified the police officers did not ask Father for permission to search his bedroom but asked him directly for the key. Believing he had "no choice," S.F. unlocked his bedroom door.

4

After the court denied the motion to suppress, S.F. admitted the allegations of count 1, and the court found him suitable for the deferred entry of judgment program. In February 2013, the court terminated S.F.'s participation in that program and found the allegations of count 1 true beyond a reasonable doubt, found the offense to be a felony with a maximum term of confinement of three years, and declared S.F. to be a ward of the court under Welfare and Institutions Code section 602.

## DISCUSSION

## I.

## Standard of Review

"'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.'" (*People v. Maury* (2003) 30 Cal.4th 342, 384.) In considering a motion to suppress evidence, the trial court "is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. [Citation.]" (*People v. Woods* (1999) 21 Cal.4th 668, 673.)

## II.

## Unlawful Arrest

We will assume for sake of argument that Officers Lawson and Moss lawfully detained S.F. for jaywalking. We conclude, however, those officers did not have probable cause to arrest S.F. for violating section 594.2(a).

"In order to comply with the law, an officer must have probable cause before making an arrest." (*In re J.G.* (2010) 188 Cal.App.4th 1501, 1505, citing *Dunaway v. New York* (1979) 442 U.S. 200, 209.) The California Supreme Court has

5

held that probable cause exists "when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime." (*People v. Price* (1991) 1 Cal.4th 324, 410.) "Probable cause must be viewed in the totality of the circumstances, not based on any isolated event." (*In re J.G.*, *supra*, at p. 1506.) "Arrests which are made without probable cause 'in the hope that something might turn up' are unlawful." (*Ibid.*, quoting *Brown v. Illinois* (1975) 422 U.S. 590, 605.)

Under section 594.2(a), possession of "a felt tip marker, or any other marking substance *with the intent to commit vandalism or graffiti*" is a misdemeanor. (Italics added.) There is no question that an oil-based marker or streaker was found on S.F. and that an oil-based marker is a felt tip marker or other marking substance within the meaning of section 594.2(a). But under section 594.2(a), possession of a marker or other marking substance in itself is not unlawful: Only possession with the intent to commit vandalism or graffiti is a misdemeanor.

Intent usually must be inferred from the facts and circumstances shown by the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27; *People v. White* (1969) 71 Cal.2d 80, 83.) In this case, no evidence was presented at the suppression hearing to support a finding that Officers Lawson and Moss could reasonably infer S.F. possessed the streaker with the intent to commit vandalism or graffiti. S.F. and Minor D. were detained only for jaywalking. No evidence was presented that graffiti or vandalism recently had been committed in the vicinity. No evidence was presented that S.F. or Minor D. was about to commit vandalism or graffiti. No evidence was presented that S.F. had ever committed vandalism or graffiti or was a participant in a tagging crew.[4]

---

[4] Officer Lawson testified that S.F. had been arrested previously with "another tagger" for possession of "vandalism tools." The juvenile court struck that testimony as irrelevant, and the Attorney General does not challenge that ruling.

The Attorney General argues a trier of fact reasonably could infer intent because when asked by Officer Lawson if he had anything illegal, S.F. said he had a streaker. According to the Attorney General, Officer Lawson had probable cause to arrest S.F. "at the very moment that [S.F.] stated that he was in possession of an illegal item, a streaker." As we have emphasized, possession of a streaker in itself is not unlawful. Although S.F. knew that streakers were used for vandalism, he did not say that *he* used them for that purpose. No evidence was presented that S.F., who was 17 years old at the time, understood the meaning of section 594.2(a), in particular, that it made possession of the streaker unlawful only with the intent to commit vandalism or graffiti. Without such evidence, and with no other facts or circumstances from which a reasonable inference of intent could be drawn, Officers Lawson and Moss could not "entertain an honest and strong suspicion that [S.F. was] guilty of a crime." (*People v. Price*, *supra*, 1 Cal.4th at p. 410.)

While no reported opinion addresses the intent requirement of section 594.2(a), cases dealing with loitering laws are instructive on the issue of probable cause. In *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 388 (*Caswell*), the California Supreme Court addressed the intent requirement of Penal Code section 647, subdivision (d), which makes it a misdemeanor to loiter in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd, lascivious, or unlawful conduct. Section 647, subdivision (d), like section 594.2(a), defines a crime in terms of a noncriminal act coupled with a specific intent. (See *Caswell*, *supra*, at p. 397.)

The defendants in *Caswell* challenged Penal Code section 647, subdivision (d) on the ground it was unconstitutionally vague. (*Caswell*, *supra*, 46 Cal.3d at p. 388.) In adopting guidelines to permit nonarbitrary enforcement of section 647, subdivision (d), the court addressed the nature and quantum of evidence necessary to give rise to probable cause to believe someone is in violation of the statute. The court described the type of conduct supporting probable cause to believe the

7

defendant violated section 647, subdivision (d): "[A]n officer may personally know an individual and may be aware that the individual has repeatedly solicited or committed lewd acts at the same location in the past. Under such circumstances, if the officer observes the individual linger suspiciously in the restroom for an inordinately long period of time, he might properly infer that the suspect did not have an innocent intent. In other cases, a police officer may have information from a reliable informant that a particular individual has disclosed his intent to frequent a particular public restroom to attempt to solicit acts in the restroom; in that situation too, the officer may well have probable cause to infer the suspect's intent even if the suspect has not yet committed indecent exposure or an actual solicitation. Similarly, complaints by citizens who have used a certain restroom that an individual was lingering inside engaging in suggestive conduct—not amounting to an actual solicitation or indecent exposure—may legitimately give rise to a reasonable inference that the individual harbors the illicit intent." (*Caswell*, *supra*, at pp. 395-396, fn. omitted.)

In addition, two cases addressing the intent requirement in other loitering statutes are instructive. In *People v. Frazier* (1970) 11 Cal.App.3d 174 (*Frazier*), three defendants had been convicted of violating Penal Code former section 653g, which prohibited loitering in or about the area of a public school. To pass constitutional muster, former section 653g had been construed to include an intent requirement—i.e., proof the defendant loitered with the intent to commit a crime should the opportunity arise. (*Frazier*, *supra*, at pp. 182-183.) Proof of the defendant's intent could be inferred from the circumstances. (*Id.* at p. 183.) The evidence in *Frazier* showed that three hot dog stands within a block of a public high school had become a magnet for large numbers of juveniles and adults, who would congregate there to gamble, fight, drink, disturb the peace, or take drugs. (*Id.* at pp. 177-178.) This conduct prompted numerous complaints from school officials and nearby residents. (*Id.* at p. 178.)

Two of the defendants were unemployed and had a history of being in or around the school grounds without reason and had been warned to leave the area. (*Frazier*, *supra*, 11 Cal.App.3d at pp. 183-184.) Both had been present near the hot dog stands while gambling was taking place. (*Id.* at pp. 183, 184.) Just before the arrests, one of the defendants was 10 feet from, and possibly taking part in, gambling activity, and was playing his car radio loudly enough to disturb the peace. (*Id.* at p. 183.) After being arrested, he twice tried to escape. (*Ibid.*) On appeal from his conviction, the Court of Appeal held the evidence was sufficient to show the defendant loitered with the intent to commit several crimes, including gambling, disturbing the peace, and resisting arrest. (*Id.* at pp. 183-184.)

When the second defendant was arrested, he was near or taking part in gambling. He twice escaped from the arresting officers. (*Frazier*, *supra*, 11 Cal.App.3d at p. 184.) The third defendant had a history of being in the area around the hot dog stands and near the illegal activity; however, when he was arrested he was not near, or engaging in, any illegal activity. (*Id.* at pp. 179, 184.) Instead, he was standing with a group of minors "doing nothing." (*Id.* at p. 182.) The Court of Appeal reversed that defendant's conviction on the ground the evidence was insufficient to support a finding of the required intent. (*Id*. at p. 184.)

In *In re Daniel G.* (2004) 120 Cal.App.4th 824, 828, 832-833 (*Daniel G.*), a minor allegedly violated Los Angeles County Code section 13.44.010, which prohibits members of criminal street gangs and their associates from loitering with the intent to publicize their dominance of an area. The arresting officer had seen the minor standing and talking with another gang member. (*Daniel G.*, *supra*, at p. 829.) The officer knew of statements by gang members that "'there would be trouble'" if other gangs came into the area. (*Id.* at p. 830.) The officer warned the minor to leave or be arrested. (*Ibid.*) When the minor did not leave, the officer arrested him for "'"gang loitering."'" (*Ibid.*)

The Court of Appeal reversed the order adjudging the minor to be a ward of the court for committing gang loitering because no evidence was presented of intent. The arresting officer's testimony, the court reasoned, amounted to "no more than . . . : because Minor belonged to [the gang], and because [the gang] members often intimidated others and publicized their dominance of the area, Minor's mere presence at the location was enough to show that Minor shared that intent on that occasion." (*Daniel G.*, *supra*, 120 Cal.App.4th at p. 835.) "Although there was evidence that [the gang] members in general had engaged in prohibited conduct, there was no evidence that Minor had ever done so in the past. Nor was there evidence to suggest that despite the absence of past participation, Minor was on this occasion either taking part in or was close by while other gang members did or said anything that could lead to an inference that they had the intent to intimidate or publicize. [The arresting officer] testified that he had not received any reports of trouble in the area and that Minor was doing nothing more than standing on the sidewalk talking to a fellow gang member. He did not testify that Minor . . . was dressed in gang attire, throwing signs, or otherwise demonstrating their gang affiliation. In short, there was no evidence that either one had done anything more which could lead to an inference that they were intimidating others or publicizing their gang at that time." (*Ibid.*)

The court in *Daniel G.* analyzed both *Caswell* and *Frazier* and concluded, "[t]he common thread running through both *Frazier* and *Caswell* is the confluence of the past and present conduct of a specific individual. In *Frazier*, all three defendants had been spotted near the high school on past occasions either engaged in or in very close proximity to ongoing criminal activity. In determining whether there was sufficient evidence that the three defendants intended to look for the opportunity to commit a crime, the convictions were sustained as to only the two defendants who were observed nearby or in the process of committing criminal acts at the time of their arrests. [Citation.] The defendant who was 'doing nothing' at the time of his arrest—who was seen simply

10

standing with a group of juveniles—had his conviction reversed.  In *Caswell*, the Supreme Court held that evidence of an individual's prior conduct, when coupled with evidence of other suspicious but noncriminal conduct occurring right before the arrest, might be enough to show the required intent to commit a lewd act.  [Citation.]" (*Daniel G.*, *supra*, 120 Cal.App.4th at pp. 834-835.)

At the suppression hearing in this case, no evidence was produced to show that Officers Lawson and Moss knew of such a "confluence of the past and present conduct of [S.F.]" (*Daniel G.*, *supra*, 120 Cal.App.4th at p. 834) to support probable cause to arrest him for violating section 594.2(a).  S.F.'s arrest for violation of section 594.2(a) was made without probable cause and was therefore illegal.

### III.

### Fruit of the Poisonous Tree

Because S.F.'s arrest for violation of section 594.2(a) was illegal, all evidence obtained as a result of the arrest that was tainted "'fruit of the poisonous tree'" had to be suppressed.  (*Wong Sun v. United States* (1963) 371 U.S. 471, 487-488 (*Wong Sun*).)  In determining whether evidence is fruit of the poisonous tree, the question is "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'  [Citation.]" (*Ibid.*)

Under the *Wong Sun* test, evidence obtained as a result of unlawful police activity is not excluded if the connection between the evidence and unlawful activity has become so attenuated as to remove the taint.  "[T]he question before the court is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." (*United States v. Crews* (1980) 445 U.S. 463, 471.)  "Relevant factors in this 'attenuation' analysis include the temporal proximity of the Fourth Amendment violation to the procurement of the challenged

11

evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct." (*People v. Boyer* (2006) 38 Cal.4th 412, 448; see *Brown v. Illinois*, *supra*, 422 U.S. at pp. 603-604.)

In this case, the search of S.F.'s bedroom was the direct result of his unlawful arrest. S.F. was detained for jaywalking in violation of Vehicle Code section 21955—an infraction that would not in itself justify an arrest. (Veh. Code, § 40000.1.) S.F. was arrested, handcuffed, and placed in the police patrol car only because he was arrested unlawfully for violating section 594.2(a). Once in the patrol car, the officers exploited the arrest by asking S.F. if he had anything illegal at his home. The search of S.F.'s bedroom was temporally proximate to his arrest. After arresting S.F., the police officers first drove to Minor D.'s home, where they stayed for 20 to 30 minutes, and then went to S.F.'s home, where they arrived 10 to 15 minutes later. From the time S.F. was illegally arrested to the time his bedroom was searched, the chain of causation was unbroken, and there were no intervening circumstances to remove the taint imposed by that arrest.

The flagrancy and purposefulness of the police misconduct has been regarded as the most important factor in the attenuation analysis because "'it is directly tied to the purpose of the exclusionary rule—deterring police misconduct.'" (*People v. Brendlin* (2008) 45 Cal.4th 262, 271.) As to this factor, we cannot say the evidence at the suppression hearing showed the police officers concocted S.F.'s arrest or acted in bad faith as a means to search his bedroom. (See *id.* at pp. 272-273.) However, Officers Lawson and Moss did not have probable cause to arrest S.F. for violating section 594.2(a) and, after making the arrest, exploited it to search his bedroom for contraband.

Finally, the fruit of the poisonous tree doctrine does not require suppression if the evidence inevitably would have been obtained by lawful means. (*People v. Boyer*, *supra*, 38 Cal.4th at p. 448.) That is not the case here.

12

At oral argument, counsel for S.F. argued the United States Supreme Court opinion in *Georgia v. Randolph* (2006) 547 U.S. 103 supported his contention the officers were not given valid consent to enter S.F.'s home and search his bedroom. We granted the Attorney General leave to submit a letter brief addressing that opinion. We have considered the letter brief but in light of our decision need not reach the issue of consent.

## DISPOSITION

The dispositional order is reversed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.F.,<br><br>    Defendant and Appellant. | G048087<br><br>(Super. Ct. No. DL041983)<br><br>O R D E R |

Respondent filed a petition for rehearing on March 12, 2014.  The petition for rehearing is DENIED.

The Office of the Public Defender of the County of Sacramento has requested that our opinion, filed on February 25, 2014, be certified for publication.

It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).   We therefore certify the opinion for publication.  The opinion is ordered published in the Official Reports as modified by the following order.

It is ordered that the opinion filed on February 25, 2014 be modified as follows:

On page 12, in the first full paragraph, at the end of the second sentence, which begins with "S.F. was detained for jaywalking," insert footnote 5, to read:

⁵ In a petition for rehearing, the Attorney General cites, for the first time, Vehicle Code section 40302.5 and argues that section gave the Officers Lawson and Moss authority to place S.F. under custodial arrest for jaywalking. We do not address whether or how Vehicle Code section 40302.5 applies to this case because the officers arrested S.F. for unlawful possession of a streaker in violation of section 594.2(a), not for jaywalking.

This modification does not effect a change in the judgment.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

2