Filed 12/15/15  P. v. Agamau CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DUANE ALLEN AGAMAU,<br><br>        Defendant and Appellant. | A143849<br><br>(Contra Costa County<br> Super. Ct. No. 51408673) |

This is an appeal from judgment after a jury convicted appellant Duane Allen Agamau of second degree burglary.  Appellant contends that the trial court erred in denying his pre-trial motion to suppress evidence pursuant to Penal Code section 1538.5 based on the lack of both reasonable suspicion to detain him and probable cause to arrest him.  Appellant further argues that his attorney provided ineffective assistance by failing to renew his suppression motion at trial.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 22, 2014, an information was filed charging appellant with second degree burglary of an uninhabited house (Pen. Code, §§ 459/460, subd. (b)).[1]  The information further alleged appellant had served two prior prison terms within the meaning of section 667.5, subdivision (b).  A preliminary hearing was held on April 16, 2014, at which the following evidence was presented.  Just before 11:00 p.m. on July 29, 2013, two residents of a housing development in the City of Oakley separately reported

---

[1]        Unless otherwise stated, all statutory citations herein are to the Penal Code.

to police observing suspicious activity near a construction site at 515 Peyton Court. One of the residents, Heather Cloud, reported that a man was dumping items from a "smaller single-cab truck" into a dumpster and walking in the vicinity of a house still under construction on Peyton Court. The suspect, who Cloud believed may have been African American, placed a large ladder and other items into his truck before driving off.

The second resident, Zachary Hurst, called the police department's non-emergency line to report seeing from his window a man dressed in a football jacket and pants enter the partially-constructed house at 515 Peyton Court. According to Hurst, the suspect had first tried to enter the house through a sliding glass window, but after finding the window locked, he eventually gained entry through the garage side door. Hurst then saw this man, who he described as darker in complexion, take a large, 20-foot ladder and some woodwork trim, which he loaded into a full-sized truck that was likely manufactured in the 1980s. Hurst initially thought this man may have been a construction worker who had returned to the site to collect some belongings. However, Hurst thought it was suspicious that the man would be taking items so late at night, prompting his non-emergency call to police.

After calling the police, Hurst continued to observe this man as he drove off with the items in the back of his truck. However, rather than leaving the area, the man stopped in front of Hurst's house and walked over to the house of Hurst's neighbor, Justin. The man then began taking the solar-powered lights illuminating Justin's yard. Realizing this man was a stranger, Hurst yelled out. The man, fumbling, dropped some of the lights before picking them back up and retreating to his truck. The man then sped away, "burn[ing] out" around the corners as he left. Less than a minute later (and about 15 minutes after he first called the police), Hurst heard sirens in the area. Hurst continued to hear the sound of the man's truck "burn[] out" around corners until, eventually, "sirens stopped the truck."

In fact, several officers had responded to the area in light of Cloud's and Hurst's reports of suspicious activity. One such officer, Officer Brian Foreman, testified that, as he pulled his marked police vehicle onto East Summer Lake Drive, he heard from Officer

2

Canady, who had also been dispatched to the area, that a vehicle matching the police report was heading towards him (to wit, a later-model, regular-cab pickup truck, possibly Toyota or Nissan). Officer Foreman thus activated his overhead lights and pulled his vehicle toward the center lane to attempt a roadblock. The officers saw just one non-police vehicle on the road – to wit, a dark-colored, single-cab smaller Chevy pickup truck with unidentified items in the back. However, rather than stopping at Officer Foreman's roadblock, this truck, driven by appellant, pulled off the road onto the shoulder and continued down the road. In response, three officers (Foreman, Canady and Griggs) activated their overhead lights and sirens and began pursuing appellant. The pickup went about a quarter mile up the road at a speed of about 35 miles per hour before pulling over. Weapons drawn, the officers approached the vehicle and called appellant out. The officers then conducted a quick search for weapons, handcuffed appellant and placed him in a police vehicle.

When asked about the items in the back of the truck (which included a ladder, still-illuminated solar lights, jumper cables, mortar and cabinet molding), appellant said he had borrowed the truck from a friend and that the items were already in the truck at the time. He could not explain the presence of the still-illuminated garden lights. Appellant then was taken to the station and his pickup truck, with the items inside, was towed from the scene. About 45 minutes later, the truck was taken to Hurst's residence for identification. Hurst immediately confirmed it was the truck he had seen in front of his house. Hurst also confirmed that the illuminated solar landscaping lights inside the truck belonged to his neighbor.

The project manager of Summer Lake Development, Mitch Holley, was later interviewed by police. Holley confirmed the property found in appellant's possession was taken without permission from 515 Peyton Court on July 29, 2013. Holley estimated this property, which belonged to his company, was worth about $400.

Following the preliminary hearing, defense counsel made a motion to suppress the evidence seized as a result of appellant's detention and arrest (including the items seized from the vehicle he was driving). Defense counsel argued there was neither reasonable

3

suspicion to detain appellant nor probable cause to arrest him given the inconsistencies in the information provided to police regarding the suspect's physical characteristics and the make, model and size of his vehicle.

After hearing from the prosecution, the trial court denied appellant's motion to suppress. The trial court reasoned that, although some contradictory information was given to police, several facts rendered the officers' actions reasonable under the circumstances, including the facts that there were no other vehicles besides appellant's pickup truck in the area when the officers arrived just minutes after dispatch; appellant's vehicle reasonably matched the descriptions provided of a suspect driving a smaller-sized pickup truck; and appellant took evasive action and failed to yield to police at the roadblock, suggesting his intent to flee.

The case against appellant thus proceeded to trial, after which the jury found him guilty of second degree burglary and the trial court found true the two prison prior allegations, one of which the court struck pursuant to section 1385. On December 19, 2014, the trial court then sentenced appellant to a total prison term of 28 months. This timely appeal followed.[2]

## DISCUSSION

On appeal, appellant reasserts his arguments from the preliminary hearing that his detention and arrest were unlawful and, thus, that the evidence seized by police incident to his detention and arrest is subject to exclusion. (See, e.g., *People v. Banks* (1993) 6 Cal.4th 926, 934 [" 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' (U.S. Const., Amend. IV.) State and local law enforcement officials are subject to the requirements of the Fourth Amendment based upon the operation of the due process clause of the Fourteenth Amendment to the United States Constitution"].)

---

[2] Because appellant has challenged on appeal only the trial court's denial of his pre-trial motion to suppress evidence, we limit our recitation of the facts to the evidence presented at the preliminary hearing.

4

# I.     Reasonable Suspicion to Detain Appellant.

Appellant first contends the police lacked reasonable suspicion to detain him because he and his vehicle did not match information initially reported to police by witnesses Cloud and Hurst.  Appellant reasons that, because the totality of circumstances failed to give rise to reasonable suspicion, his detention went afoul of the constitutional prohibition against unreasonable search and seizure and deprived him of a fair trial.  (See U.S. Const., 4th and 14th Amends.; Cal. Const., art. 1, § 13.)[3]

The applicable law is not in dispute.  "[T]he temporary detention of a person for the purpose of investigating possible criminal activity may, because it is less intrusive than an arrest, be based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity. (*United States v. Cortez* (1981) 449 U.S. 411, 417 & fn. 2 . . . ; see also *In re Tony C.* (1978) 21 Cal.3d 888, 893 . . . [in which this court articulated a two-part test:  (1) that some activity relating to crime has taken place, is occurring, or is about to occur; and (2) that the person to be detained is involved in that activity].)"  (*People v. Souza* (1994) 9 Cal.4th 224, 230.)  Thus, as reflected in the controlling case law, "detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*People v. Souza, supra,* 9 Cal.4th at p. 231.)[4]

---

[3]     As the People note, appellant purports to challenge the court's ruling as a violation of his right to a fair trial under the Fifth Amendment.  However, appellant fails to provide a reasoned argument to support this contention.  As such, appellant has forfeited the right to appellate review on this ground.  (Cal. Rules of Court, rule 8.204(a)(1)(B).)

[4]     Our high court has also made clear that "reasonable suspicion" to detain requires a lesser showing than "probable cause" to arrest (an issue to which we will turn in Section II of this opinion).  Not only can "reasonable suspicion . . . be established with information that is different in quantity or content than that required to establish probable cause, but also . . . reasonable suspicion can arise from information that is less reliable than that required to show probable cause."  (*People v. Souza, supra,* 9 Cal.4th at pp. 230-231, quoting *Alabama v. White* (1990) 496 U.S. 325, 330.)

In this case, as appellant notes, the evidence at the preliminary hearing was conflicting with respect to the suspect's physical characteristics and the make, model and size of his vehicle. Cloud reported seeing a black male driving a smaller, single-cab pickup truck. Hurst, in turn, described a darker-skinned man driving an older, full-size 1980s pickup truck, either a Ford or Chevy, with a loud exhaust. In actuality, appellant is a white male who was driving a smaller model Chevy pickup truck. In addition, appellant notes he was driving just 35 miles per hour when pulled over by police, a speed not indicating evasiveness or flight. According to appellant, the totality of these circumstances precludes a finding of reasonable suspicion that he had committed a crime.

We disagree with this contention. Indeed, appellant's reading of the evidence disregards the governing standard of review, which requires us to defer to the trial court's findings of fact so long as they are supported by substantial evidence. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.) In other words, we must defer to the trial court's weighing of evidence, resolution of conflicts in evidence and credibility assessments. We must also view the relevant facts in the light most favorable to the trial court's ruling, resolving all conflicts in its favor. (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.) Meanwhile, we independently review only the trial court's application of the law to these facts. (*Ibid.*) If correct on any relevant theory, the trial court's ruling stands. (*Ibid.*)

Thus, returning to the relevant record, and viewing the evidence in proper context and proper light, we are left with the following summary. Two individuals called the police at about 11:00 p.m. to report that a black or darker-skinned male with a "smaller" or "full-sized," "single-cab" or "regular-cab," later-model pickup truck had taken items, including a large ladder, from a residential construction site. This man placed these items in the bed of his pickup truck, drove off, but then stopped again in front of Hurst's house, at which time he began taking illuminated solar-powered lights from Hurst's neighbor's yard. Then, when Hurst yelled at the man, he sped away, "burning" around the corners as he went.

Less than a minute later (and about six minutes after the police were dispatched), Hurst heard sirens. The responding officers almost immediately saw one vehicle in the

6

area — to wit, a "single-cab" or "regular-cab" pickup truck reasonably matching the witnesses' descriptions.[5] Due to darkness, the responding officers could not see the driver. However, Officer Foreman activated his overhead lights and attempted a road block by stopping his squad car across the direction of oncoming traffic on East Summer Lake Drive.[6] Yet, rather than stopping or making contact with the officers, appellant drove off the road and onto the shoulder before continuing on at a speed of about 35 mph. Moreover, although three officers pursued him with lights and sirens on, he continued for a quarter mile before stopping.

This evidence, considered in light of the totality of the circumstances, provided the police officers with "specific articulable facts" demonstrating "some objective manifestation" that appellant was involved in criminal activity at the time of his detention. (*People v. Souza, supra,* 9 Cal.4th at p. 231.) While appellant insists his speed was just 35 mph at the time, a speed not indicative of flight, this fact does not diminish the probative value of the other evidence supporting the trial court's contrary finding. (*People v. Souza, supra,* 9 Cal.4th at pp. 233, 235 [a suspect's flight is relevant when assessing whether reasonable suspicion exists, even of a possible innocent explanation for the flight may exist]; *People v. Leath* (2013) 217 Cal.App.4th 344, 355 [minor discrepancies in descriptions of the suspect or vehicle are not dispositive for purposes of reasonable suspicion].) On this record, the officers could reasonably believe criminal activity involving appellant was afoot, thereby justifying their decision to detain him.

## II.  Probable Cause to Arrest Appellant.

Appellant further contends there was no probable cause to arrest him after his detention because the officers failed to take reasonable investigatory steps such as having

---

[5]  The pickup was a Chevy from the 1980s rather than, as Cloud described, a Nissan or Toyota.

[6]  Appellant makes much of the fact that Officer Canady, the first officer to initiate contact, did not testify at the preliminary hearing. However, whether there is substantial evidence supporting the trial court's finding of reasonable suspicion is assessed based on the totality of the evidence presented at the hearing, not on whether a particular witness testified. (See *People v. Tully* (2012) 54 Cal.4th 952, 979.)

Hurst and Cloud, the individuals who reported suspicious activity at 515 Peyton Court, identify him prior to arrest. According to appellant, the officers' conduct violated his constitutional rights against unreasonable search and seizure. (See U.S. Const., 4th, 5th and 14th Amends.; Cal. Const., art. 1, § 13.)

To comply with the law, an officer must have probable cause before making an arrest. (*In re J.G.* (2010) 188 Cal.App.4th 1501, 1505, citing *Dunaway v. New York* (1979) 442 U.S. 200, 209.) Probable cause exists "when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime." (*People v. Price* (1991) 1 Cal.4th 324, 410.) Further, probable cause must be assessed in light of the totality of circumstances at the time of arrest; an arrest made without probable cause cannot be justified after the fact based upon evidence revealed by the search incident to the arrest. (*In re J.G., supra,* 188 Cal.App.4th at p. 1506.)

Here, appellant's main point in arguing that the police lacked probable cause to arrest him is that, prior to his arrest, the officers did not present him to Cloud or Hurst for a show-up identification procedure. However, appellant's argument disregards that probable cause must be assessed based upon a totality of the circumstances. Even assuming the police's failure to present appellant to the eyewitnesses for a show-up prior to arrest weighs against the existence of probable cause, there are numerous other facts in this record that, when weighed in a favorable light, clearly support the trial court's finding of probable cause. Most of these facts were previously identified in our reasonable-suspicion analysis and, thus, are only briefly restated here. When appellant was pulled over in a traffic stop, the police were objectively aware of at least three things. First, two eyewitnesses had reported seeing a single-cab pickup truck involved in suspicious activity just minutes earlier in the same area where police spotted appellant's vehicle, to wit, the only truck visible to the officers at the time. Second, these eyewitnesses had observed the driver of this truck placing items in the truck, and the officers could see that appellant had items in the back of his truck. And finally, appellant took evasive driving measures to avoid the police roadblock designed to stop all drivers,

8

and had driven about a quarter mile while being pursued by three squad cars with lights and sirens activated. These evasive driving measures, in fact, prompted the officers to conduct a "high risk vehicle stop," calling appellant out of the truck with weapons drawn rather than approaching him. These facts alone support the trial court's ruling that probable cause existed for his arrest. (*People v. Price, supra,* 1 Cal.4th at p. 410 [probable cause exists "when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime"].) Appellant complains, nonetheless, that he was patted down, handcuffed, and placed in the squad car *before* his vehicle and the items inside were taken to Hurst's residence for identification. (See *In re Dung T.* (1984) 160 Cal.App.3d 697, 715 [" 'it is only in a rare case where, absent probable cause for arrest, the removal of a suspect to a police station for further investigation is constitutionally permissible' "].) However, even assuming appellant is correct that his handcuffing and placement in the police vehicle constituted an arrest for purposes of the Fourth Amendment, this assumption does not change the fact that substantial evidence exists in this record to support the trial court's judgment. As the California Supreme Court instructs, "there is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances." (*People v. Celis* (2004) 33 Cal.4th 667, 674-675.) Accordingly, having confirmed this standard was met in this case, we affirm the judgment.[7]

## DISPOSITION

The judgment is affirmed.

---

[7] Given our conclusion that appellant's detention and arrest were legal, his remaining contention – to wit, that his trial counsel was constitutionally ineffective for failing to preserve these issues for review – necessarily fails. (*People v. Hart* (1999) 74 Cal.App.4th 479, 493.)

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.